## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1909.

*(Continued from Volume 137)*

## ALBERT WERNER, Respondent v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 31, 1909.

1. MASTER AND SERVANT: Negligence: Electric Wires: Pleading: Evidence. On review of the facts including the nature and effect, place and time of injury, together with the proximity of a powerful electric current, the evidence is held to support a reasonable inference based on facts and circumstances and not in part on speculation that plaintiff was struck by an electric current of high potentiality.

2. ———: ———: Two Causes of Injury: Burden of Proof. The rule that when the injury may have resulted from one of two causes, for one of which the master would not be liable, the burden is cast on the servant of affirmatively proving that his injury was the direct result of his master's negligence, does not apply when the proof sustains the inference that the injury was the direct result of one of two causes created by the master's negligence; and the servant fully discharges his burden when he establishes the wrong of the master with a natural consequence of damage to himself.

3. ———: ———: ———: Recovery. The servant is not precluded from a recovery because of his inability to prove whether his shock from the electric current was received from contact with a certain pipe near the top of a car where he was sent, or from contact with the wet roof.

138 App.—1                                          (1)

4. ———: ———: ———: **Risk: Pleading Evidence.** *Held,* on review of the pleading and the evidence that the gist of a servant's action was the negligence of the master in sending him, an unskillful workman, unfamiliar with the risks in such a highly dangerous place without warning in regard to the nature and extent of the danger, and the conduct of the foreman is condemned as negligent.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*John H. Lucas, Warner, Dean, McLeod & Timmonds* and *H. M. Langworthy* for appellant.

(1) The court committed error in overruling defendant's demurrer to plaintiff's evidence. (2) The evidence does not prove or tend to prove that the negligence alleged in the petition was the proximate cause of the injury, but leaves it to bare conjecture. (3) The evidence shows that plaintiff assumed the risk of injury arising from the work in which he was engaged at the time of the accident.

*Guthrie & Smith* and *Boyle & Howell,* for respondent, filed argument.

JOHNSON, J.—Action by a servant against his master to recover damages for personal injuries alleged to have been caused by the negligence of the master. Plaintiff had judgment for $3,000, and defendant appealed.

Defendant operates a street railway system in Kansas City using electricity for motive power and at the time of the injury, August 8, 1907, maintained a car barn at Eighteenth and Olive streets. A damaged car had been run into the barn for repairs. It had been raining and the car was wet. The trolley pole had been bent in the middle accidentally to a V shape with the

apex pointing upward and the end bent downward and outward. The car was run to a place in the barn where the light was poor and plaintiff was ordered to the top by defendant's foreman and was told to pull the trolley pole away from the trolley wire against which the apex of the pole rested. Plaintiff did this with some difficulty and then the foreman told him to restore the contact. He obeyed, and in a few moments was again ordered to break the contact between the pole and wire. He was in the act of complying with this order when witnesses heard him suddenly scream in pain and saw him sink to the roof unconscious. He rolled off the roof and fell to the floor.

It is the theory of plaintiff that a severe shock of electricity was the cause of his injury. The trolley wire touched by the elbow of the pole carried a heavy current and the evidence shows the existence of two means by which the body of plaintiff might have served to ground the current. A wire ran through the trolley pole and on account of its wet condition, the insulation afforded by the pole might have been insufficient to prevent the escape of the current and if plaintiff at the time he held the pole in his hand touched some grounded conductor of electricity, a circuit thereby would be opened through his body. There were two such conductors within reach of his body—one the wet car, the other a pipe of a sprinkling system in the barn. On account of the closeness of the overhead wires to the top of the car, plaintiff was required to work in an awkward and cramped position and when his clothing became wet (as it must have done in the positions he was compelled to take), the subsequent contact between his body and the wet roof while he was holding the pole would close the circuit—so his expert witness testified. The same result would have followed a contact between plaintiff's body and the sprinkler pipe which extended horizontally the length of the car on a level with the roof and about six inches therefrom. It would have been quite natural

for plaintiff to grasp this pipe with one hand for support while he used the other hand to wrench the trolley pole away from the wire.

Plaintiff has no recollection of how he received the shock. One of its effects was to shatter his memory and impair his understanding and power of concentration. No witnesses saw him either touch the sprinkler pipe or kneel or squat on the wet roof. Witnesses simply heard him cry in distress and saw him sink, limply to the roof and roll off. The petition alleges "that by reason of the condition of said trolley pole being bent and requiring handling in a strained and awkward position, and of said car and of the location of said car with reference to other objects so that there was not sufficient space above to work easily, and that there were dangerously near grounded rods, pipes and other conductors of electricity, and of the existing darkness at the place where such services were to be performed and of the atmospheric conditions existing, in that it was damp and wet and dark, and of the powerful current of electricity in a wire, with which said trolley pole, in the course of such work was at such times necessarily connected, and of the awkward and strained position in which plaintiff was compelled to perform such services, the place in which plaintiff was required to go, as he did, pursuant to such directions, for the purpose of performing such services, which he did perform, was an unnecessarily dangerous and unsafe place in which to work, and defendant was negligent in directing the plaintiff to work as aforesaid therein, and the defendant negligently failed to warn the plaintiff (whose duties did not require him to be, as he was not, familiar with such conditions and the dangers arising therefrom), of the dangers existing by reason of such current of electricity and the other conditions aforesaid, and to advise and instruct plaintiff as to securing himself against injury therefrom. In the course of the performance of the work aforesaid, under the conditions and in the manner aforesaid, and as a result of the negli-

gence of the defendant as aforesaid, the plaintiff became and was so positioned that he received a great and violent shock from such electricity which caused him to fall from the car to the floor below."

The answer is a general denial, a plea of contributory negligence, and a plea that the injury, if any, was due to one of the risks assumed by plaintiff. The principal discussion in the briefs of counsel is of questions arising from the contention of defendant that the court should have peremptorily directed a verdict in its favor. It is argued by defendant that the evidence fails entirely to show that plaintiff received an electric shock and in finding that he did, the jury necessarily was compelled to resort to conjecture. The recent case of Byerly v. Electric Co., 130 Mo. App. 593, is relied on to sustain this contention. We found the inference from the facts and circumstances adduced in that case that Byerly's death was due to another cause than an electric shock was as reasonable as an inference that he received such shock and, therefore, that the plaintiff had failed to show a direct causal connection between the negligence averred and the injury. But the facts and circumstances in the case now before us easily and vitally differentiate it from the Byerly case. The scream of pain, followed immediately by unconsciousness, the subsequent manifestations of the effects of intense nervous shock, the close proximity of plaintiff to a powerful current of electricity the two instrumentalities by which that current could readily be diverted to his body, coupled with an entire absence of any other cause for the powerful stroke inflicted on him, support a reasonable inference based entirely on facts and circumstances in proof and not in part on speculation that the stroke was from an electric current of high potentiality.

Further, it is argued that since the evidence of plaintiff fails to show that he came in contact with the sprinkler pipe, or closed the circuit by contact with the wet car, he has failed in his proof, for the reason that

either of these acts might have caused the injury and it was part of plaintiff's burden to show which of them was the producing cause. When the evidence of the plaintiff shows that his injury might have resulted from one of two or more causes, for one of which defendant would be liable and for the others not, it should be held that he has failed in his proof since his burden casts on him the duty of proving affirmatively that his injury was the direct result of the defendant's negligence. But, obviously, this rule should not be applied to defeat a recovery in cases where the proof sustains an inference that the injury was the direct result of one of two or more causes, all created by negligence of the defendant alleged in the petition. The burden of plaintiff in such cases is to point in his evidence to alleged negligence as the proximate cause, and it is not of vital importance that he should single out the specific negligent act or cause. When he completes the causal connection between the wrong averred and the resultant injury, he has fully discharged his burden and demonstrated that he has a cause of action, viz., a wrong of the defendant with a natural sequence of injury and damage to the plaintiff.

The justice of what we are holding cannot be better exemplified than in the facts of the present case. Here we have a man stricken by a powerful, subtle, invisible and inconceivably active agency. There are two possible ways in which this hidden foe could have escaped confinement and delivered its attack on him. No one could see the course followed nor the attack. The result was the only tangible evidence of the occurrence. Now, when it appears from the evidence of the plaintiff that the attack, no matter how delivered necessarily was caused by the negligence of the defendant, what useful purpose could be served in requiring the plaintiff to go further with his proof, when the very nature of the attack made impossible specific proof of the exact manner of its delivery? The cases cited by defendant all deal with the

rule which compels a plaintiff to single out a negligent act of the defendant as the producing cause of his injury, where the facts and circumstances show the existence of other probable causes not due to the negligence of the defendant. None of these cases goes to the extent of holding that the plaintiff has failed in his proof, where his evidence shows the injury to be the result of one of two or more causes, for all of which defendant would be liable, but does not single out the specific cause. We hold that plaintiff should not be precluded from a recovery because of his inability to prove whether the shock was received from contact with the sprinkler pipe or from contact with the wet roof.

The gist of the cause of action asserted by plaintiff is the negligence of defendant in sending an unskilled workman who was unfamiliar with the risks into a highly dangerous place without warning him of the nature and extent of the danger he would have to face. A servant himself assumes the risks which are natural and incidental to his employment, but he does not assume those which are created by the negligence of the master. He has the right and it is his duty to rely on the judgment and humanity of the master and to assume that the master has exercised reasonable care to furnish him a reasonably safe place in which to work and that he will not be sent into a dangerous place without being warned of the nature and extent of the dangers he must encounter. Defendant argues that plaintiff had knowledge of the risks he was called on to meet and therefore needed no warning. Plaintiff admits he had heard fellow workman speak of some of the dangerous properties and proclivities of electricity, but it is a fair inference from all the evidence that his knowledge of that force was most general and vague. He had been employed as a brake-rod repairer and a fender painter; had worked some on trolley poles as helper to the principal workman. In none of these services had he been required to come into close quarters with wires and other instrumen-

talities charged with powerful currents. He was young and inexperienced and evidently had no knowledge of the hidden dangers lurking in the place where defendant sent him to work. It is apparent the place was highly dangerous. Under ordinary conditions, the close proximity of high currents of electricity made his task dangerous and called for the exercise of great care and caution, but with the protecting barriers to the transmission of electricity weakened or destroyed by the wet condition of the car and trolley pole, the act of defendant, in requiring an inexperienced and ignorant workman to go there and work with a pole that contained what was practically an uninsulated wire charged with a heavy current of electricity, was negligence of a pronounced type. It is fair to presume defendant knew of plaintiff's inexperience and in ordering him into that trap, it sent him blindfolded to play with death. We have present all the elements of a cause of action based on the negligence of the master in sending an inexperienced servant to work in a dangerous place without warning, and the injury resulting from such negligence does not belong to one of the natural and incidental risks of the employment.

The demurrer was properly overruled.

We think the allegations of the position are broad enough to support proof that the car and trolley pole were wet, and the facts and circumstances in evidence sustain the conclusion that plaintiff could have received the shock by coming into contact with the pole and car roof.

We have examined the instructions and find no substantial error in them. The case was fairly tried and it follows that the judgment must be affirmed. It is so ordered. All concur.