WILLIAM DILLMAN, Appellant, v. JOHN BURKE et al., Defendants; PLANTERS HOTEL COMPANY, Respondent.

St. Louis Court of Appeals, June 6, 1911.

1. NEGLIGENCE: Injury to Servant of Independent Contractor: Liability of Owner of Premises. In an action for injuries to an employee of an independent contractor, where the conduct complained of was not that of the independent contractor, his servant, agent or sub-contractor, but was that of the owner's own agent and servant, the doctrine that one is not responsible for the negligence of an independent contractor, etc., is not applicable, but the case should be governed by the broad doctrine "that whenever one person is by circumstances placed in a position with regard to another that everyone of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of another, a duty arises to use ordinary care and skill to avoid such injury."

2. ——: ——: ——: Facts Stated. Plaintiff's employer having contracted to put in a new cable on a hydraulic elevator in defendant's hotel, plaintiff, a mechanic skilled in his trade (which did not include the operation of the hydraulic cylinder and valves by which the power was communicated to the elevator), after completing his work, with the exception of testing the elevator, went to defendant's chief engineer who had complete charge of the hydraulic appliances and requested him to turn on the power. The engineer directed plaintiff how to turn the power on and informed him, after directing his actions, that the power was on, without knowing as a matter of fact whether or not it was on and without taking any steps to ascertain that fact. Plaintiff betrayed his ignorance of the subject by questions asked the engineer concerning the functions of other valves than those used, and displayed his dependence upon the directions of the chief engineer and recognized the latter's position and authority by obeying his directions implicitly and in detail. Plaintiff, after being assured by the engineer that the power was on, went beneath the elevator car, withdrew the safety stops, whereupon the car immediately fell on him, because the power had not in fact been turned on. Held, it is manifest that any one of common sense who thought would at once have recognized that plaintiff would rely upon the statement of the chief engineer that the power was on and that if the latter made the statement without exercising ordi-

nary care to ascertain if it were true, he would cause danger of injury to plaintiff, and the duty, therefore, devolved on defendant through its chief engineer to exercise such care; *held, further*, that the evidence justifies the inference that the elevator fell by reason of the fact that the power was not on, and that the engineer's negligent conduct in inducing or causing plaintiff to release the safety catches upon the faith of the power being turned on was the proximate cause of plaintiff's injury.

3. ———: ———: **Contributory Negligence: Question for Jury.** In an action for injuries to a servant of an independent contractor by the fall of an elevator, due to the negligence of defendant's chief engineer in informing plaintiff that the power had been turned on when in fact it had not, whether plaintiff was negligent in acting on the engineer's statement *held* for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

REVERSED AND REMANDED (*with directions*).

*Hervey T. Crist* and *Blevins & Jamison* for appellant.

(1) Where the employer retains control over or undertakes to provide any of the instrumentalities, he owes to the contractor and his employees the duty of care in respect thereto. Kiser v. Suppe, 133 Mo. App. 28; Roddy v. Railroad, 104 Mo. 234; Fassbinder v. Railroad, 126 Mo. App. 569; Jewell v. Bolt and Nut Co., 231 Mo. 176, 132 S. W. 707; Johnson v. Navigation Co., 132 N. Y. 576; Fuller v. Bank, 15 Fed. 875. (2) The defendant is liable where it interferes with an independent contractor and assumes control over work and methods and means of its performance. Norwalk Gas Light Co. v. Norwalk, 63 Conn. 495; Hawke v. Brown, 50 N. Y. Sup. 1032; Faren v. Sillers, 39 La. Ann., 1011; Fox v. Ireland, 61 N. Y. Sup. 1061; Fuller v. Bank, 15 Fed. 875; Wright v. Holbrook, 52 N. H. 120; Berg v. Parsons, 156 N. Y. 109; Uppington v. New York, 165 N. Y. 222; Eaton v. Railroad, 59 Me.

520; 1 Robt. (New York), 432; Burgess v. Gray, 1 C. B. 578; Kampmann v. Rothwell, 107 S. W. Rep. 120; Maher v. Steur, 170 Mass. 454; Bohrer v. Dienhart Harness Co., 45 Me. 668; Sullivan v. Dunham, 54 N. Y. Sup. 962; Johnson v. Navigation Co., 132 N. Y. 576.

*Percy Werner,* for respondent, filed argument.

STATEMENT.—Action to recover damages for personal injuries sustained by the plaintiff while at work in an elevator shaft at the Planters Hotel, occasioned by the falling on him of an elevator cage.

The defendants were the Planters Hotel Company, John Burke and William Kraus. At the close of plaintiff's evidence, however, the court gave an instruction in the nature of a demurrer to the evidence as to the two last named defendants, but refused a similar instruction for the defendant, Planters Hotel Company, and the trial proceeded against it alone. At the close of all the evidence, the court refused an instruction offered by the defendant, Planters Hotel Company, in the nature of a demurrer to the evidence. Thereupon the jury returned a verdict for plaintiff and against the Planters Hotel Company in the sum of five thousand dollars. The court thereafter sustained the motion of defendant, Planters Hotel Company, for a new trial upon the ground that it had erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by the defendant, Planters Hotel Company, at the close of all the evidence, to which action of the court in sustaining the motion for a new trial, plaintiff at the time duly excepted, and thereafter perfected an appeal to this court.

The petition charged the alleged negligence of defendants in effect as follows: That on February 10, 1908, plaintiff was in the employ of Burke and Kraus,

and that under their direction he made certain repairs upon a hydraulic elevator in the Planters Hotel, in the city of St. Louis, Missouri, belonging to the defendant, Planters Hotel Company; that at the completion of the repairs, plaintiff, acting under the direction of Planters Hotel Company and of his employers, Burke and Kraus, undertook to test the elevator; that he placed a barrel in the bottom of the elevator pit, on which to stand in order that he might reach the floor of the elevator in order to reach the safety valve; that the defendant, Planters Hotel Company, and plaintiff's employers, Burke and Kraus, then and there directed the work of plaintiff and represented to him that the power was on and that it was safe for him to proceed to make the test; that prior to the making of the repairs, the defendant, Planters Hotel Company, had shut off the power for water pressure; that without this power for water pressure it was dangerous for plaintiff to proceed to make the test as directed, all of which was known to the defendants; that defendants knew, or by the exercise of ordinary care for the safety of plaintiff would have known, that the power or water pressure was shut off, and that it would be dangerous for plaintiff to proceed to make the test, but in disregard of the safety of plaintiff they failed and neglected to connect the power for water pressure and notwithstanding this negligence directed the plaintiff to proceed with making the test; that plaintiff in entire ignorance of his danger proceeded with his work, and that upon the opening of the safety valve under the elevator, the elevator dropped suddenly upon him; that had the power or water pressure been connected, this fall would not have occurred. Plaintiff further states that by reason of the fall of the elevator, he has been greatly and permanently injured, etc.

The separate answer of Planters Hotel Company was a general denial coupled with an allegation that plaintiff's injuries were due to his own negligence in taking a position on top of a barrel beneath the cage of the elevator in question, and whilst in said position releasing the cage above him, so as to allow same to fall upon him, and in failing to turn on the water connected with the operation of said elevator before releasing the safety appliance. Reply a general denial.

It appears from the evidence that on February 9 and 10, 1908, the defendant was engaged in operating a large hotel in the city of St. Louis, known as the Planters Hotel. Therein it had, and operated, five hydraulic or water-pressure elevators. Its chief engineer had entire and supervisory charge and control, as its agent and servant, of the entire mechanical plant of the hotel, which was quite extensive and included the elevators and the machinery connected therewith. In the course of his employment he ascertained that one of the elevators was in need of a new wire cable to lift and lower it while in operation, the one in use having broken, and for and on behalf of the defendant, on February 9, 1908, he contracted with John Burke and William Kraus, co-partners, as independent contractors, to furnish and install such new cable. The plaintiff, experienced in the work of constructing and repairing elevators, was in the employ of Burke and Kraus and was engaged as their servant upon this particular work. He and they came to the hotel on February 10th, and worked up to half-past ten o'clock that night. At that hour they had gotten the cable installed and their work was completed, except for making a test by operating the elevator to see if the new cable worked all right or whether it needed tightening or loosening. This test the plaintiff and his employers undertook to make.

The power for raising and supporting the elevator car was designed to be furnished through the rais-

ing of a piston in a large vertical cylinder, located in a room in the basement. This cylinder extended from the basement floor up through the ceiling into the second story above the basement. The introduction of water into the cylinder from the bottom made the piston raise and lift and hold the car up with it by means of the cable. The movement of the car was controlled by means of a valve on the cylinder called the "operating valve" to which was attached the operator's rope which ran up the shaft and through the car. If the car was desired to raise the rope was pulled downwardly and the pull turned the operating valve so as to let the water into the cylinder and make the piston raise. Whether this introduction of water into the cylinder would be accomplished depended upon whether the flow of water for that purpose was cut off or turned on. The water came to within three feet of the cylinder in a large main. From this main a smaller pipe ran to the cylinder. The flow through this smaller pipe to the cylinder was shut off or turned on by turning the wheel of a certain valve called the "main stop valve." Now when the plaintiff and his employers had arrived at the hotel to do the work of installing the new cable they had found the water power shut off, and the elevator held fast about eight feet above the bottom of the shaft or pit by some clutches or safety catches. In order to test the elevator by operating it, it was necessary to turn on the water power and release the clutches or safety catches. If the clutches or safety catches should be released before the power was turned on, then there would be nothing to hold the elevator suspended and it would fall. If the power should be turned on first and a slight upward movement given to the elevator by pulling the control rope then the elevator would not fall but would remain suspended or move slowly upward by means of this new cable when the clutches or safety catches were released. The evidence on behalf of plaintiff

tended to prove that the plaintiff and his employers, desiring to make the test, went down into the basement where the machinery was and there found the defendant's chief engineer apparently alone; that plaintiff was not familiar with the system of valves controlling the water supply for hydraulic elevators, valves of that sort being constructed by steam fitters and handled and supervised by engineers, and not being in his line of business; that in making tests at the completion of a job, his work had been confined to notifying the engineers of readiness to begin and then staying up and watching the cable to see how it performed its function and adjusting it as it seemed necessary. When the plaintiff and his employers came upon the chief engineer in the basement it was about ten-thirty o'clock in the evening and the chief engineer had just returned from the theatre. As we have mentioned, none of the chief engineer's assistants appear to have been around. The chief engineer asked Kraus, one of the plaintiff's employers, if they were through and Kraus replied that they were unless he wanted them to test the elevator. He said, "certainly, I want you to test it." Mr. Burke, the other of plaintiff's employers, asked the engineer if they wouldn't have to let the cylinder run full of water and the engineer said, "no, the cylinder was never drained;" that they only shut off the water pressure and tied up the operating valve when the old cable broke. He then turned around and took plaintiff and Kraus into the cylinder room and pointed to the "operating valve" which was about eight feet above the floor and was tied to the cylinder with a rope, and said it was necessary to untie that. Plaintiff climbed up on a box and untied the rope. The engineer then pointed to the "main stop valve" and said it would be necessary to open that. Plaintiff then turned the wheel of that valve several times. Plaintiff then asked the engineer if some other pipes or valves had anything to do with

the power and he said, "No, don't touch them, *your power is on all right now.*" The chief engineer then asked the plaintiff and his employer if they had a wrench sufficient to release the safety catches which were underneath the elevator car and they told him the largest wrench they had was a twelve inch monkey-wrench. He said that would be insufficient and suggested that he had a twenty-four inch Stilson wrench in the engine room. Kraus went back to the engine room to get it. While he was gone the plaintiff and the chief engineer walked out of the cylinder room to the elevator shaft. They stopped in front of the car and the chief engineer suggested that plaintiff should put a barrel which stood by into the elevator pit. Plaintiff rolled the barrel over and put it into the pit. Mr. Kraus then returned with the wrench but it was only a fifteen-inch Stilson, and the chief engineer said, "That is too small, gentlemen; you will be able to do nothing with that;" but at Kraus' suggestion the plaintiff tried it and found it was too small. The chief engineer then said he would go with Kraus to seek a larger wrench and they soon came back with the twenty-four inch Stilson wrench, Kraus carrying it, and handed it to plaintiff. Before attempting to release the safety catches with the wrench plaintiff took the precaution to pull down on the operating or control rope in such a manner as would have caused the lift cable to pull upward and hold the elevator suspended or lift it slowly upward, when the clutches or safety catches were released, *if the power had been on.* Being underneath the car and the car being held fast by the safety clutches or catches he was unable to observe the effect or lack of effect of this precautionary action on the lifting cable. Thereupon plaintiff applied the wrench to the safety catch and released the elevator and instead of remaining suspended or moving upward it crashed down upon him and seriously and permanently injured him. The plaintiff

testified that he released the safety catches without
first satisfying himself that the power was on because
he had been told that the power was on.

CAULFIELD, J. (after stating the facts).—The
doctrine that one is not responsible for the negligence
of an independent contractor, his servants, agents, or
sub-contractors, in the execution of work, has no place
in this case for the reason that the conduct complained
of was not that of the independent contractors, etc.,
but was that of the hotel company's own agent and
servant, the chief engineer. The case should rather
be governed by the broad doctrine "that whenever
one person is by circumstances placed in a position
with regard to another, that everyone of ordinary
sense who did think would at once recognize that if
he did not use ordinary care and skill in his own con-
duct with regard to those circumstances he would cause
danger of injury to the person or property of another,
a duty arises to use ordinary care and skill to avoid
such injury." [Heaven v. Pender, 11 Q. B. D. 503,
509.] See Loehring v. Construction Co., 118 Mo. App.
163, 94 S. W. 747, where that doctrine is applied by
this court in a carefully considered opinion written
by Judge NORTONI. Now, here we have a situation
where, if plaintiff's evidence is to be believed, the
work of testing the new cable, which alone remained
to be done to complete the job undertaken by the plain-
tiff's employers, did not include the task or respon-
sibility of turning on the water power, but was con-
fined to watching and adjusting the new cable while
the elevator was being operated by the power over
which the defendant, Planters Hotel Company, re-
tained control. But, however that may be, the de-
fendant's chief engineer was in a position of power
and authority over the entire mechanical plant of the
defendant and reasonably to be assumed to have su-

perior knowledge concerning what was necessary and proper to be done in order to turn on the power. At least he assumed to have that knowledge, by undertaking to direct the plaintiff how to turn the power on and to inform the plaintiff, after directing his actions, that the power was on. Plaintiff was but a mechanic, skilled in his particular trade, it is true, but acting outside of his trade as to this cylinder and valves. He betrayed his ignorance of the subject by his question concerning the functions of other valves and displayed his dependence upon the directions of the chief engineer, and recognized his superior position and authority by obeying his directions implicitly and in detail. It is manifest that any one of common sense who thought would at once have recognized that the plaintiff would rely upon the statement by the chief engineer that the power was on, and that if the chief engineer made the statement without exercising ordinary care to ascertain if it was true, he would cause danger of injury to the person of the plaintiff. The duty therefore devolved on defendant through its chief engineer to exercise such care. Now how did the chief engineer perform that duty? He testified that he did not know whether the power was turned on or not, and he took no steps to ascertain, yet, if we take plaintiff's evidence to be true, as the jury undoubtedly did, immediately before plaintiff went beneath the elevator car to release the safety catches the chief engineer after directing the plaintiff what to do in order to turn the power on and watching him follow the directions, said, "now your power is on" and then stood and directed and watched the plaintiff while the plaintiff, relying upon the statement that the power was on and lulled into a sense of security by that false statement, released the safety catches and brought the elevator down upon himself. The evidence justifies the inference that the elevator fell upon the plaintiff by reason of the fact that the power was not on, and that

by negligently inducing or causing the plaintiff to release the safety catches upon the faith of the power being on the defendant's negligent conduct, acting through its chief engineer, was the proximate cause of the plaintiff's injury. Nor are we able to agree that the plaintiff was guilty of contributory negligence as a matter of law. His testimony tended to prove that he possessed only a very limited amount of knowledge concerning the machinery governing the water power. Whether, under the circumstances, with his limited knowledge, his manner of attempting to turn on the power was negligent, and whether he was negligent in acting on the chief engineer's statement that "now your power is on" without taking precautions to verify that statement, there being nothing to indicate that the statement was false, were clearly questions of fact for the jury.

The order of the circuit court setting aside the verdict is reversed and the cause remanded with directions to reinstate the verdict and enter judgment for the plaintiff thereon as of the date when the verdict was returned. *Reynolds, P. J.,* and *Nortoni, J.,* concur.