RUBY DOBSON v. OTIS ELEVATOR COMPANY, Appellant.

RUBY DOBSON v. LUCKS-ORWIG-LEROI, INC., Appellant.—26 S. W. (2d) 942.

Division Two, April 7, 1930.

1148

*Jones, Hocker, Sullivan & Angert* for appellant, Otis Elevator Company.

*T. M. Pierce* and *Samuel H. Liberman* for appellant, Lucks-Orwig-Leroi, Inc.

1150

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondent.

1152

WHITE, J.—This is one case with two appeals. The plaintiff recovered judgment against both defendants in the sum of $17,000 for personal injuries. The trial court overruled a motion for new trial on condition that the plaintiff remit $4,000. The *remittitur* was entered, the motion was overruled, and each defendant appealed.

The Lucks-Orwig-Leroi, Inc., appellant, occupied five floors of a building. It was called a decorating company. The plaintiff was employed by it to do sewing on draperies, bed spreads, carpets and the like. She worked on the fifth floor of the building. A passenger elevator ran up to the fourth floor and no further. A freight elevator ran all the way to the fifth floor. About a dozen employees worked on the fifth floor, under a forelady, Mrs. Horst. On arrival at the building in the morning, those employees went up on the passenger elevator to the fourth floor and then walked up to the fifth floor. Their quitting time was five o'clock in the afternoon, and then, for some reason not stated, they usually came down on the freight elevator.

The defendant Otis Elevator Company was employed by the Lucks-Orwig Company to make certain repairs on the elevator. First the Otis Company installed automatic electric gates, opening only when the elevator was at the landing. This installation was completed three or four weeks before the injury complained of. While the installation was taking place, the Otis Company lashed the elevator to the cage on the fifth floor so it could not be used. After the gates were installed, apparently the elevator was used as before until the day on which the plaintiff was injured, September 16, 1925. On that morning one Mr. Thompson, a salesman and solicitor for the Otis Company, with two mechanics went to the place and had a talk with

the secretary of the Lucks-Orwig Company, Mr. Settledge. Thompson told him that the Otis Company was ready to continue the work on the elevator, and it would be necessary to put it out of commission for several days.

Mr. Volk, one of the mechanics in the employ of the Otis Company, explained what was done. He said that they removed the brake, worm and armature from the motor. He said in answer to a question that in that condition the elevator would have a tendency to descend of its own weight with about nine people in it. He explained the reason for removal of those appliances. It was done between eleven o'clock and four-thirty on the day mentioned. The elevator was not lashed at that time and nothing was done to secure it so as to prevent its use.

At five o'clock, quitting time, the plaintiff went to the freight elevator. Eight persons including Mrs. Horst, the forelady, were already on the elevator. Just as plaintiff stepped on, it fell. Somebody screamed, and Mrs. Horst, "hollered, 'Stop the elevator.'" The plaintiff grabbed the rope, stopped the elevator between the third and fourth floors, but in doing so her fingers were torn off. She was thrown to the floor of the elevator by the shock, receiving other injuries.

The negligence alleged in the plaintiff's petition was that the defendants negligently failed to warn the plaintiff of the dangerous condition, negligently failed to prevent the plaintiff from going on the elevator by a barricade or otherwise, and failed to secure it from descending; failed to discover the dangerous condition, and negligently permitted the elevator to remain in the dangerous condition, exposed to use by the employees of the Lucks-Orwig Company. That the defendant Lucks-Orwig Company failed to furnish plaintiff a safe place to work, failed to employ competent persons to operate the elevator, and negligently permitted the elevator cage to be operated without being equipped with devices for stopping it.

The defendant Otis Elevator Company filed for answer a general denial. The Lucks-Orwig Company filed a general denial and alleged contributory negligence on the part of the plaintiff, in disobeying orders and directions about the use of the elevator, and in boarding it without having signaled to the shipping clerk, who was the proper one to operate the elevator. Other facts than those mentioned above will be noted in considering the points made for reversal.

I. The Otis Elevator Company at the close of all the evidence offered a demurrer, which was overruled, and now assigns error to that ruling. In support of its position it asserts that because it was an independent contractor it could only be liable if it was negligent or unskillful in performance of the work required by the contract; that it would not be liable if it executed the contract according to the plan provided therein, and that there was no evidence that the work was negligently or unskilfully done.

That principle could not apply here. This is not an action for breach of contract. That the plaintiff had no contractual relation with the Otis Company would not affect the situation. The Otis Company was bound to know that leaving the elevator in a dangerous condition, likely to fall with a number of persons upon it and endanger the lives of employees if they should undertake to use it. It would be liable for injury caused by that condition, and it would not at all matter whether the work done was in compliance with the contract it had with the Lucks-Orwig Company or not. [Young v. Waters-Pierce Oil Co., 185 Mo. 634, l. c. 665-666; Choka v. Railway, 303 Mo. l. c. 144.]

This appellant in its brief admits that Volk and Frahme, the mechanics who did the work, knew they were leaving the elevator in an unsafe condition when they suspended work, and says "and equally, of course, if they had known that this troupe of women would pile in it thirty minutes later, ordinary common sense and humanity would commonly require that they would take some steps to prevent such an occurrence." The brief then asserts that this was a freight elevator, that those mechanics notified the chief executive officers of the Lucks-Orwig Company that it would go out of service and remain out until they finished the work, and they did not know that it was used by the employees as a passenger elevator; that they only knew that Jim, the shipping clerk, was its operator, and they told him the elevator could not be used until they finished the work. With these assertions this appellant claims that it had no notice whatever that the elevator would be used at all until they finished the work.

There is no evidence whatever that these two mechanics, Volk and Frahme, knew or had reason to believe that the shipping clerk was the only person who used the elevator for the purpose of transporting freight. In that case it would be a question for the jury whether the Otis Company took sufficient precaution to prevent the use of this dangerous instrumentality, left open for anybody to use who came that way.

Further, Volk and Frahme were only the mechanics who performed the work. The person representing the Otis Company in

this connection was Edward H. Thompson, its salesman and solicitor. Thompson testified that there were various ways in which the elevator could be made safe, and it was made safe previously at the time they installed the gates.

Mr. Settledge, the secretary for the Lucks-Orwig Company, testified that Thompson came and negotiated the contract for repairing the elevator, and that he, Settledge, thereupon instructed the shipping clerk to get all the freight down so the repairs could be made the following day. Thompson then said that it would be necessary to tie up the elevator, so no one could operate it. Thompson came to see Settledge on the morning of the accident, and said that he wanted the elevator that day to complete the work. Thompson knew that women were brought down on the elevator at quitting time in the afternoon.

This defendant seeks to apply the doctrine that a principal is not affected by knowledge which an agent acquires while not acting in the course of employment. It argues that Frahme and Volk performed the work, with which Thompson had nothing to do, and therefore notice would have to be given to them instead of to Thompson in order to charge the defendant with notice. The evidence shows that Thompson did receive that notice in the course of his employment. He was the one who negotiated the contract and called that morning upon Mr. Settledge, secretary of the Lucks-Orwig Company, to say that the use of the elevator should be discontinued, and, acting for his company, he advised Mr. Settledge that the elevator would be lashed to the ceiling. Thompson undertook to see that proper precautions were taken. His effort in that direction was limited to notifying the Lucks-Orwig Company that precautions would be taken, with no instruction whatever to the mechanics to do the very thing which he assured the Lucks-Orwig Company would be done.

The demurrer to the evidence of the Otis Company was properly overruled.

II. The Lucks-Orwig Company assigns error to the action of the court in overruling its demurrer to the evidence. It is first asserted that there was no evidence that the company knew or should have known that the elevator was left in a dangerous condition.

Mr. Settledge testified that he instructed Miss Silbac, one of the employees, to go up to the fifth floor and tell all the employees to stay away from the elevator, but he said Miss Silbac failed to give that instruction. Thus he knew that such warning ought to be given, but he took no further precaution to see that the employees were notified.

Mr. Orwig, of the Lucks-Orwig Company, testified that when the gates were installed, he got the girls together and told them that they should ring for the shipping clerk before they attempted to go down, and that plaintiff was present when he gave that instruction. The plaintiff denied that she heard any such instruction, and testified that Mr. Orwig's instructions were given to the forelady, Mrs. Horst, and Mrs. Horst was the one that instructed the girls. It would have been easy to place a placard there, or some sort of notice that the elevator was out of commission. That the elevator was dangerous to use on that day is not disputed. That Lucks-Orwig Company knew it is proven beyond controversy.

Thompson testified that all he did on that day was to notify the Lucks-Orwig Company that it would be necessary to shut the elevator down, that he said nothing about any agreement to lash it up. It was the duty of the Lucks-Orwig Company, knowing that it was in a dangerous condition, to take necessary precaution to prevent its employees from using it. It rested either upon the assumption that the Otis Company would secure the elevator so it could not be used, or else relied upon an alleged agreement by the Otis Company to lash it up so it could not be used. The Lucks-Orwig Company offered evidence to show there was such an agreement by the Otis Company. The jury were not obliged to believe that evidence. It was denied by the employees of the Otis Company. It was for the jury to say whether under the circumstances the Lucks-Orwig Company should have taken additional precaution to ascertain whether the elevator was left in that dangerous condition and to warn their employees. It had no right to assume that the Otis Company would make it secure. The Young case, 185 Mo. 634, supra, is directly in point. The demurrer to the evidence by the Lucks-Orwig Company was properly overruled.

III. Error is assigned by appellant Otis Company to the action of the court in admitting the testimony of Settledge regarding Thompson's statement that the elevator should be tied up. The evidence was admissible for the purpose of showing that the Otis Elevator Company knew the necessity of taking proper care to prevent injury by reason of the dangerous condition in which it left the elevator. Since Thompson, representing the Otis Company in procuring the performance of this work, had knowledge of the danger, his knowledge was the knowledge of the Otis Company.

Error is also claimed in the admission of testimony that Thompson knew the employees of the Lucks-Orwig Company used that elevator. That evidence was offered and introduced without objection.

IV. The Otis Company further claims that error was committed in failing to exclude from the consideration of the jury its alleged negligence in failing to tie up the machine or barricade it. The Otis Company offered and the court refused a withdrawal instruction to that effect. What we have said above disposes of that, complaint.

V. Error is also assigned by the Otis Company to the refusal of an instruction to the effect that the Otis Company, knowing that the Lucks-Orwig Company was informed that the elevator ought not to be used, had a right to assume that this information was communicated to the employees of the Lucks-Orwig Company, and had a right to rely thereon. Such an instruction does not state the law, that defendant could not absolve itself from the effect of its own negligence on the ground that it might rely upon someone else to perform a duty which devolved upon it.

VI. The Lucks-Orwig Company assigns error to the refusal of the court to give certain instructions, K, L and N, asked by it. Instruction K told the jury that the defendant Lucks-Orwig Company was under no duty to barricade the elevator so as to prevent persons from going upon it, and took that assignment of negligence from the jury. Instruction L is to the same effect. These instructions were on the theory that this defendant was under no duty to use care in seeing that its appliances were safe for the use of its employees. It was the duty of the Lucks-Orwig Company, knowing that the elevator was in a dangerous condition and not safe for use, to use any method it might see fit, which would be sufficient to prevent injury to its employees, and it was not proper to withdraw from the consideration of the jury any method by which that end might be accomplished.

Instruction J, refused by the court, told the jury that an employer had a right under the law to give its employees reasonable orders, directions and instructions, and the right to require its employees to obey such reasonable orders, directions and instructions, and that if the jury believed from the evidence that defendant, prior to the accident, instructed, ordered and directed its employees, who worked on the fifth floor, including the plaintiff, not to use or attempt to use the elevator, but to wait for the shipping clerk to take them down in said elevator, and if the plaintiff stepped into the elevator in violation and disregard of such order, direction and instruction, without waiting for the shipping clerk, when the plaintiff knew the shipping clerk was not then or there on the elevator, the plaintiff was not entitled to recover.

That alleged order to summon the shipping clerk, of which there is perhaps some evidence, was given at the time the gates were installed some weeks before the particular injury complained of occurred. The evidence is undisputed that the order, if there was one, was disregarded. The instruction was improper because it is not complete. The plaintiff would not necessarily be guilty of disobeying such an order if she followed the forelady, Mrs. Horst, into the elevator. She would not forfeit her right to recover if she had reason, to rely upon the presence of her immediate superior, nor if the order had been generally disregarded so that she had reason to believe she was not required to observe it.

Further, the order, if there was one, to call the shipping clerk to operate the elevator was given several weeks before, and pertained to the ordinary operation of the elevator during the time *it was in use*. The danger at the time the plaintiff was hurt was due to the failure of this defendant to prevent the use of the elevator altogether. It was not in condition to be used at all, with or without the presence of the shipping clerk. The instruction was properly refused.

VII. The Lucks-Orwig Company complains that the damage was excessive. The judgment stood at $13,000 after the *remittitur.* The first three fingers of the plaintiff's right hand were torn off and the little finger was injured. She was unable to use the hand. She suffered injury in her back, causing a menstrual disturbance, and her condition in that respect continued until the time of the trial. She suffered from restlessness, nervousness and loss of sleep. She had done no work after the accident up to the time of the trial, which took place in January. 1927. She was injured September 16, 1925. She earned nineteen dollars a week before the injury. She was forty-one years of age. Her business was sewing, and her hand apparently disabled from doing that kind of work. We find no sufficient reason to hold the verdict excessive.

The judgment is accordingly affirmed. *Blair, P. J.,* concurs; *Walker, J.,* absent.