Lois H. Atherton v. Kansas City Power & Light Company, a Corporation, Appellant.—No. 39874.—202 S. W. (2d) 59.

Division Two, May 12, 1947.

506

*Ludwick Graves, Irvin Fane, James H. Ottman* for appellant; *Johnson, Lucas, Graves & Fane* of counsel.

*John G. Madden, Ralph M. Russell* and *Frank Brockus* for respondent; *Madden, Freeman, Madden & Burke* of counsel.

508

■■■

■ BOHLING, C.—The Kansas City Power & Light Company, a corporation, appeals from a judgment for $10,000 in favor of Lois H. Atherton for the alleged wrongful death of Harold S. Atherton, her husband. The suit was timely instituted. Plaintiff's case was submitted on the ground defendant was guilty of common law negligence in failing to warn Atherton of certain danger. Defendant contends that it was not guilty of actionable negligence; that there was no substantial evidence of a failure to warn; that Atherton was guilty of contributory negligence as a matter of law; and that the court erred in refusing to admit a certain letter offered in evidence by defendant. The issues involving a case made call for the facts favorable to plaintiff.

Harold S. Atherton, aged 39, died September 18, 1933, as a result of coming in contact with high voltage electric current on the platform of the substation of the Whitaker Battery Supply Company (for convenience hereinafter designated Whitaker) in North Kansas City, Missouri. Atherton entered Whitaker's employ in 1925 as a salesman. At the time of his death he was production manager—over-seeing the production of the foundry and assembly, checking the operations and cost records and having general supervision over the substation. He had earned up to $5,000 annually. He had graduated from Pratt Institute, Brooklyn, N. Y. He received no degree as an engineer, the course of study covering only two years. He was experienced in mechanical engineering, but was inexperienced in electricity. (There was evidence to the contrary and much of defendant's argument is based thereon.) A witness testified that Whitaker hired an electrician when there was occasion for electrical work and that Atherton had nothing to do with it.

In 1931 Whitaker contracted with defendant for the construction of an outside substation. This substation was approximately 8 by 12 feet at the base and 21-1/2 feet above the ground. It carried 13,200 volts and had six warning signs of the high voltage. About 9-1/2 feet above its base was a platform of "arrowhead" grating, having spaces between the metal strips of 3/4ths of an inch. It was exposed to the weather and there was testimony that the wind and rain sufficiently cleaned this type of platform. The platform had a guard rail about 2-1/2 to 3 feet from the lightning arresters. As we read this record,

the nearest point of the platform to the nearest point of a lightning arrester (there being three parallel with the platform) was put at 2-½ feet and also at 9 inches. There was a switch at the extreme top of the substation, known as the "pole top switch" or "main gang line switch." We understand opening this switch would de-energize the Whitaker circuit but that the lightning arrester circuit would remain unaffected.

The testimony established that if a substation had a "disconnect" it could cause an "outage" or an interruption of service to the customer and to all other users on that "series." Defendant inspected all substations periodically, consumer-owner as well as company owned, for the benefit of the owner of the substation that it be maintained in proper condition and for the benefit of the consumers on the line and the company that electric service and the sale of electric energy not be interrupted. The substation platform was safe enough for an experienced man but dangerous for one not experienced. After inspecting a consumer-owned substation, defendant's inspector would contact the consumer's representative in charge of the substation and make his recommendations. A letter was always written specifying the recommendations and carried appropriate safety precautions.

Defendant's inspector Jennings first inspected the Whitaker substation in September, 1932. At that time Atherton was in Oakland, California, and the matter was taken up with T. H. Stuver, Whitaker's secretary and Atherton's superior officer. Jack Liebst, who was Atherton's assistant, performed the maintenance work then recommended. As disclosed by the record, Atherton's connection with the substation was limited to participating in the conferences connected with the contract for its construction, to placing an order in April, 1931, for an oil circuit breaker and accessories and ordering, in February, 1932, some oil for the transformer and supervising putting the oil in to bring it up to the level mark on the gauge.

On Saturday, September 16, 1933, Jennings again inspected the Whitaker substation, finishing at about the noon hour. He went to Whitaker's main office and, after a short delay, Atherton, who was in the building, came in. Mrs. Atherton testified that she frequently called for her husband, especially on Saturdays, and that she followed Jennings into the office at the time and stood by; within 3 to 5 feet, during the entire conversation between Atherton and Jennings. Jennings left a memorandum with Atherton suggesting the painting of the furnace transformer case, the cleaning of switch insulators inside the oil switch house and the transformer high voltage bushings, and the cutting of the weeds and grass inside the fence. Mrs. Atherton further testified that Atherton inquired about the cost and whether Whitaker employees might do the work. Jennings replied in the affirmative and said: "By the way, there is an awful lot of dust out

there, particularly on the platform," and that it also should be taken care of. Atherton informed Jennings they would close down Monday afternoon to do the work. Jennings then said: "Don't forget to have your men open the pole top switch and lock it after they clean the weeds out at the substation"; and departed. She testified that Jennings did not warn Atherton about the lightning arresters, lightning arresters disconnecting switches, or wires.

On Monday afternoon, September 18, 1933, Atherton and Liebst, who was not an electrician, prepared to do the work. They secured rags and paint brushes et cetera and immediately after 4:30 they opened the "pole top switch," on the substation. They did nothing with respect to the lightning arresters switches. Atherton, who had some rags in his hand, went up the pole on the east side of the substation and within a minute or so there was a flash and a roar. Liebst did not see what Atherton had done. He testified that when he did the maintenance work the year before the "pole top switch" had been opened and locked the same as on this occasion. Atherton had come in contact with the lightning arresters or wires leading thereto and was found hanging over the rail guarding the substation platform. He died that night.

Defendant contends it owed Atherton no duty to warn and plaintiff may not recover upon an alleged failure to warn. Defendant argues that Atherton knew 13,200 volts came into the substation and that his training and experience was such that he knew or should have known that the lightning arresters remained charged with electricity although the pole top switch was locked in the open position. Vogt v. Wurmb, 318 Mo. 471, 476, 300 S. W. 278, 279[2]; Main v. Lehman, 294 Mo. 579, 589, 243 S. W. 91, 93[2]; and other similar cases are stressed, some being discussed in Paubel v. Hitz, 339 Mo. 274, 277[1], 96 S. W. (2d) 369, 370 [3-5]. They are to the effect that an occupier of land is under no duty to warn a business invitee of unsafe conditions which are obvious or as well known to the invitee as to the occupier. They are readily distinguished from the instant case on the facts and the law.

In holding an electric utility to the highest degree of care and foresight, we said in Clark v. St. Louis & S. Ry. Co., 234 Mo. 396, 435, 137 S. W. 583, 594: "Electricity is the most dangerous and deadly agency known to man, subtle and invisible, and, ordinarily, incapable of being detected by the unskilled in electricity." See Foster v. ▮▮▮ Kansas City, C. C. & S. J. Ry. Co., 325 Mo. 18, 26 S. W. (2d) 770, 773[5], citing cases; 29 C. J. S. 576, n. 24.

The substation was located on Whitaker's property and Whitaker exercised control over it. Defendant also was interested in its operation. Defendant's business was generating and selling electric energy for profit. It had the duty of rendering adequate service to all patrons in addition to the incentive of profits from uninterrupted

service. Inspections of substations were for the profit of defendant as well as for the benefit of their owners. Defendant promoted its own business in making the inspections. That one is production manager for a battery supply company and has general supervision over its substation does not establish as a matter of law that all dangers attending the operation and maintenance of the substation were obvious to such person. Only on two or three occasions had there been any work about the substation. Atherton was not experienced with electricity and electric substations and was out of the State when the recommendations of 1932 were performed. One experienced in electrical substation construction, after opening the "pole top switch" might look up at the wires to make certain such act de-energized the entire substation and, by tracing the wires, discover that the lightning arresters were not disconnected and electric energy was moving over that circuit. But a man inexperienced with substation construction might proceed, as Atherton evidently did, on the premise that the substation had been de-energized upon his disconnecting the "pole top switch" and conclude it was safe to work thereon below the place where the circuit had been broken. It was the 13,200 volts of electric power, the invisible force, that killed Atherton, and not the wires and arresters of the lightning arresters circuit. All witnesses on the subject, including defendant's employees, testified that it was dangerous for an inexperienced man to be on the platform of the substation. Atherton was complying at defendant's suggestion with defendant's recommendations for the maintenance of the substation and there was testimony, if believed, that he was on the platform because of the recommendations. Defendant always warned that the lightning arresters connections remained energized and were to be avoided when making recommendations for the maintenance of consumer-owned substations. Jennings' testimony was not that a warning was unnecessary but that he instructed Atherton to lock the "pole top switch" in the open position and, with respect to a warning concerning the lightning arresters: "It was necessary and I gave it." Defendant's letter, addressed to Whitaker and dated September 18, 1933, contained such a warning but was not delivered until after Atherton's death. There was testimony that Jennings failed to warn Atherton of this danger on Saturday when Atherton stated the work would be performed on Monday. While due care is ruled by the applicable principles of law, what usually is done is ordinarily some evidence of what ought to be done, as for instance, the giving of a warning for the doing of an act is some recognition that the circumstances call for a warning. Grosvener v. New York Cent. Rd. Co., 343 Mo. 611, 621 (III), 123 S. W. (2d) 173, 178; 45 C. J. 653, n. 81; 29 C. J. S. 577, Sec. 40; 18 Am. Jur. 446, Sec. 50; 38 Am. Jur. 679, Sec. 34; Annotation, 68 A. L. R. 1400, 1409, 1435. The jury was required to find, in addition to the fact that this warning was not given,

that the failure to give it constituted negligence as a matter of fact. The facts favorable to plaintiff made a submissible case. Consult Dillman v. Burke, 158 Mo. App. 137, 145, 138 S. W. 57, 59[1]; Annotation in 134 A. L. R. 507; 9 A. L. R. 174; 29 C. J. S. 611, Sec. 57.

 Defendant inspected the Whitaker substation, made recommendations for its maintenance and gave warning for the safety of the men in performing the work. Defendant knew of the dangers attending the work and that it was going to be performed. In giving such warning, defendant was required to exercise due care. Consult Bartlett v. Taylor, 351 Mo. 1060, 1065, 174 S. W. 2d 844, 847[2, 3]; Werner v. Metropolitan St. Ry. Co., 138 Mo. App. 1, 7, 119 S. W. 1076, 1078, 9. An insufficient warning could give a false sense of security to an inexperienced person.

 What we have said disposes of defendant's contention that Atherton was guilty of contributory negligence as a matter of law. The jury could find that he took all precautions within defendant's warning and that the dangers attending the high voltage passing over the lightning arrester circuit was not known or obvious to him. He was on his master's property for its proper maintenance and, having followed instructions, if he believed the substation was fully de-energized we think it can not be said as a matter of law that the invisible 13,200 volts of electric power within the lightning arrester circuit was so obvious to him as to relieve defendant of its negligence. It is not. presumed that he committed suicide or voluntarily came in contact with this deadly electric current fully realizing the danger. Pulsifer v. City of Albany, 226 Mo. App. 529, 535, 47 S. W. 2d 233, 236[3-6]; Unrein v. Oklahoma Hide Co., 295 Mo. 353, 368, 244 S. W. 924, 927[4]; Stewart v. Laclede Gas L. Co. (Mo.), 241 S. W. 909, 912[3, 4]; Staab v. Rocky Mountain Tele. Co., 23 Idaho 314, 319, 129 Pac. 1078.

 There was substantial evidence that defendant's inspector did not warn Atherton about the dangers connected with the lightning arresters. Mrs. Atherton testified she was within 3 to 5 feet of Atherton and Jennings during their conversation and that although Atherton was warned to lock the pole top switch in the open position, there was nothing said about the lightning arresters, or lightning arresters disconnecting switches or anything of that kind. This testimony was disputed by the inspector. It was, however, substantial evidence and the question was for the jury.

 Defendant seeks to have the cause remanded because the court. refused to admit in evidence its exhibit A, the carbon copy of its letter of October 3, 1932, to the Whitaker Battery Supply Company, "attention of Mr. T. H. Stuver" and the report of inspection attached thereto. This letter was written in connection with the inspection of the substation on September 28, 1932, and concerned matters transpiring while Atherton was in California. The letter and the report

each contained warnings that although the pole top switch be locked in the open position, the lightning arresters, disconnecting switches and all wires on the line side of the pole top switch remained charged with 13,200 volts and workmen should be careful not to come in contact with these parts and that they did not require cleaning at that time. Plaintiff's counsel, when the offer was made, inquired as to its purpose, and upon being informed: "Well, there are several"; objected to its admission on the ground, in effect, that a letter addressed to the attention of Stuver while Atherton was out of town was not sufficient in itself to charge Atherton with knowledge of its contents. Defendant's counsel answered: "I may say the defendant will not offer any direct evidence to the effect that Mr. Atherton ever saw that letter. I think, and my offer is intended for the purposes that the jury may draw any inferences that it wishes to." The court sustained the objection.

After the close of all the evidence and the overruling of defendant's motion for a directed verdict, defendant sought to have the case reopened for the purpose of receiving exhibit A in evidence "since defendant considers this evidence material and crucial" and its exclusion prejudicial error. Plaintiff's counsel renewed his objection and the motion to reopen the case was overruled.

Defendant says that if the exhibit was admissible for any purpose, it should have been received and then plaintiff, upon request, would have been entitled to an instruction limiting the scope for which the jury might properly consider it. Ferril v. Kansas City L. Ins. Co., 345 Mo. 777, 791, 137 S. W. 2d 577, 585[8]. But the circumstances in the instant case differ. Here the exhibit was excluded upon objection, after defendant had been requested to state the purpose of the offer. "As a general rule, in order to preserve for review an objection to the exclusion of evidence, a proper question must be asked, and, on objection thereto, a proper offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all the facts necessary to establish its admissibility." 4 C. J. S., p. 580, Sec. 291, b, (1), citing many Missouri cases along with cases from other states; for instance, Byam v. Kansas City Pub. Serv. Co., 328 Mo. 813, 826, 41 S. W. 2d 945, 952[15]. Edmonston v. Jones, 96 Mo. App. 83, 92(2), 69 S. W. 741, 743(2), states: "Whether or not the replevin record was admissible for other reasons need not be discussed, since appellant is limited to the reason he gave at the time he made the offer of evidence." See also Fearey v. O'Neill, 149 Mo. 467, 473(I), 50 S. W. 918, 919(1), 73 Am. St. Rep. 440; 4 C. J. S. 582, n. 47.

Testimony, undisputed, established that after an inspection of a substation recommendations were made orally to the consumer's representative in charge and thereafter confirmed by letter; that such

letter would incorporate the warning mentioned above covering the 13,200 volts in the lightning arrester circuit after locking the pole top switch in the open position, and, although exhibit A was not admitted in evidence, that the original thereof had been mailed, as stated, to Whitaker. Thus defendant had before the jury through other evidence that portion of exhibit A it desired to introduce.

Plaintiff's verdict directing instruction required the jury to find in the conjunctive, among other things, that on September 16, 1933, Jennings warned Atherton only with respect to the pole top switch and failed to warn him with respect to the lightning arresters, and that the failure to so warn on said date constituted negligence. There was an abundance of evidence, including the testimony of defendant's witnesses, that the omitted warning was necessary and essential for Atherton's protection. Atherton, the customer's representative in charge of the substation, informed defendant he would have Whitaker employees do the work the following Monday. He was the one entitled to a warning. Defendant's position that the exhibit was admissible on the theory the warning therein discharged its full duty to Whitaker and to Atherton is refuted by the testimony, including testimony from defendant's witnesses, upon which the jury based its finding of common law negligence. Any duty of defendant to warn on September 16, 1933, was not discharged under this record on October 3, 1932. Negligence on the part of Whitaker would not relieve defendant of its obligation. Consult Dobson v. Otis Elev. Co., 324 Mo. 1147, 1157 (V), 26 S. W. 2d 942, 945 [9]; General Box Co. v. Missouri Util. Co., 331 Mo. 845, 55 S. W. 2d 442, 443.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.