In the Matter of the Care and Treatment of Lloyd KING, a/k/a Lloyd E. King, a/k/a Eddie King, a/k/a Scott Warlock, a/k/a Lloyd Edward King, a/k/a Nikki Edward Merrell, and a/k/a Nikki Merrell, Appellant,

v.

State of Missouri, Respondent.

No. SD 30570.

Missouri Court of Appeals, Southern District, Division Two.

April 28, 2011.

Emmett D. Queener, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., for Respondent.

DANIEL E. SCOTT, Chief Judge.

After a jury trial, Lloyd King was civilly committed as a sexually violent predator ("SVP") per RSMo §§ 632.480 *et seq.* He raises two claims of evidentiary error on appeal.

### Background

In 1997, King pleaded guilty in Missouri to first-degree child molestation of a nine-year old. A seven-year sentence was suspended, probation was granted, and King was ordered to get sex offender treatment. Instead, he absconded.

Five years later, while living in Wisconsin under an alias, King was charged with sexual assault of a six-year old. He was returned to Missouri, where probation was revoked and he was imprisoned. He then pleaded guilty in Wisconsin for time concurrent with his Missouri sentence.

King's disciplinary infractions in prison included marijuana use, possession of contraband, theft, and a safety violation. He twice failed to complete the sex offender program (MOSOP). MOSOP psychologists indicated that King was not honest, lacked commitment to treatment, showed no empathy for his peers, did not consider himself a risk to reoffend, and did not noticeably change his insights or attitudes.

Two months before King's prison release, the State petitioned to civilly commit him as a SVP.[1] King's correspondence with friends, while awaiting trial, expressed his fear of commitment and a plan to avoid it by falsely confessing to unsolved crimes in

---

1. *State ex rel. State v. Parkinson,* 280 S.W.3d 70, 72–73, 76 (Mo. banc 2009) describes the procedures (not at issue here) for instituting and prosecuting such proceedings.

other states in hope of being extradited.[2] King sent at least two such letters to Minnesota, claiming that he murdered two girls in one county and buried a third body in another county. Minnesota officers interviewed King and investigated his claims, but concluded that he was lying to evade civil commitment.

Prior to the commitment trial, the State moved in limine to preclude King's claim that he did not commit the sex crimes to which he had pleaded guilty. The trial court heard argument, confirmed that King had not entered Alford pleas,[3] and sustained the motion.

We can address King's claims on appeal without describing the trial at length. We need not detail the evidence because King does not dispute its sufficiency. To explain King's first point, however, we must reference Dr. Kent Franks, an expert witness for the State. Dr. Franks testified as to King's SVP status and likelihood to reoffend, and the test results and other bases for his expert opinions on those issues. King's letters were mentioned as reflecting a lack of remorse and willingness to falsely confess in order to avoid treatment. Dr. Franks cited one letter, in which King denied his Missouri crime and portrayed himself as the victim instead, as an example of "victim-blaming" and a risk factor for reoffense.

## Point I

King complains that he was not allowed to testify that he pleaded guilty in 1997 "to something he did not do because his attorney did not provide him with relevant facts in the case and he accepted a plea bargain for probation in order to avoid incarceration for ten years to life." He now claims such testimony "would have countered Dr. Franks' opinion that [King's] denial of the allegations demonstrated 'victim-blaming,' a refusal to accept responsibility, a lack of remorse, and further 'victimization,' all of which increased [King's] risk to reoffend if not committed."

King did not assert this basis for admissibility, or any other, in making his offer of proof on the third and final afternoon of trial. King simply took the stand, out of the jury's presence, and testified to the effect that he did not commit the Missouri crime, but his public defender was ineffective, so he pleaded guilty as a matter of "self-preservation" to avoid a possible life sentence. No explanation or commentary preceded the offer of proof, which was followed by this colloquy:

[COURT]: Question by the State?

[STATE'S ATTORNEY]: I don't have any questions for Mr. King, but I would—if I could make a quick record. Based on Mr. King's offer of proof I would just state for the record that that line of questioning and answer is precisely why the State filed the motion in limine that the judge granted.

After hearing what Mr. King had to say, at a bare minimum, as I sat there listening to it, were this line of questioning permitted at this trial I would—the State would request a continuance in order to give us time to go back and again at a minimum call as witnesses whoever did the forensic interview of the girl at the time, the police who responded at the time, the mother who has been

---

**2.** King also wrote of actions he might take if committed, such as stabbing a guard or soliciting a media expose.

**3.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) held that it was not constitutional error to accept a guilty plea from a defendant who, although professing innocence, faced strong evidence of guilt and could limit the penalty he might otherwise receive if he went to trial.

alleged did some form of witness tampering, the victim to get her statement, DFS workers who were involved and the defense attorney who, although Mr. King has alluded to that person in the masculine, it appears from the record that in fact he was represented by Ms. Brenda Shemeyer (phonetic spelling). I'm not familiar with her, but I would certainly in light of the allegations of ineffective assistance of counsel that Mr. King just made, certainly we would call Ms. Shemeyer to the stand to get her side of the story.

So that is an off-the-cuff minimum list of the witnesses that the State would feel compelled to call were this type of testimony allowed.

[COURT]: Offer of proof will be rejected.

[DEFENSE COUNSEL]: Okay. And (indiscernible).

■ In challenging the exclusion of evidence, King "is limited to the reason he gave at the time he made the offer of evidence." *Atherton v. Kansas City Power & Light Co.*, 356 Mo. 505, 202 S.W.2d 59, 64 (1947), *quoted in Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 668 (Mo.App. 2008) *and Marion v. Marcus*, 199 S.W.3d 887, 892 (Mo.App.2006). A party is obligated "to bring to the attention of the trial court its position as to relevancy of evidence offered. Such position should be included in the offer of proof." *Frein v. Madesco Inv. Corp.*, 735 S.W.2d 760, 762 (Mo.App.1987). King did not do so.

■ Even if we construed King's pretrial arguments against the motion in limine broadly enough to encompass his current claim, a ruling in limine is interlocutory and subject to change during trial. *State v. McCullum*, 63 S.W.3d 242, 259 (Mo.App.2001). A motion in limine and, by extension, supporting or opposing arguments at that time preserve nothing for

appeal. Missouri courts strictly apply these principles because "trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *Id.*

In any event, King's arguments are not well taken on their merits. *See James v. Paul*, 49 S.W.3d 678, 682–88 (Mo. banc 2001)(estoppel effect of guilty plea in subsequent civil litigation); Restatement (Second) of Judgments § 85, Comment *b* (1982)(guilty plea estops defendant "from contesting facts representing the elements of the offense" in subsequent civil litigation).

■ Trial courts enjoy broad discretion to admit or exclude evidence; we disturb such rulings only for clear abuse of that discretion—*i.e.*, a ruling so arbitrary, unreasonable, and clearly against the logic of the circumstances as to shock the sense of justice and indicate a lack of careful consideration. *State v. Artis*, 215 S.W.3d 327, 334 (Mo.App.2007). There was no abuse of discretion here.

For all these reasons, Point I fails.

### Point II

■ King sought to testify that he confessed to out-of-state crimes out of fear because he thought SVP commitment was "a lifetime sentence." The State objected that this was inaccurate and legally irrelevant. The trial court agreed in part, ruling that King could not say "lifetime," but allowing him to testify that he was motivated by fear and desperation to avoid civil commitment.

King claims the trial court abused its discretion in so ruling. We disagree, finding support for the State's well-taken accu-

racy and relevancy complaints in *Morgan v. State*, 272 S.W.3d 909, 913 (Mo.App.2009)(similarly rejecting proffered jury instruction stating that SVP's commitment would be "for the rest of his natural life"). The issue is not admissibility, but abuse of discretion. *See State v. Freeman*, 212 S.W.3d 173, 176 (Mo.App. 2007). On the record, as in Point I, this ruling was not arbitrary, unreasonable, illogical, lacking in careful consideration, or shocking to the sense of justice. *Artis*, 215 S.W.3d at 334. We deny Point II and affirm the judgment.

RAHMEYER, P.J., and FRANCIS, J., concur.