Joseph SCHROECK (Plaintiff), Respondent,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation (Defendant), Appellant.**

No. 45520.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1957.

Warner Fuller, John P. Montrey, St. Louis, for (defendant) appellant.

Gragg, Aubuchon & Rooney and William R. Schneider, St. Louis, for respondent.

BARRETT, Commissioner.

In this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for negligent personal injury the plaintiff, Joseph Schroeck, has recovered a judgment against the Terminal Railroad in the sum of $25,000. Joe is an electrician, particularly a lineman, and has been employed by the Terminal since October 1945, having spent the previous twenty-two years in the electrical department of Laclede Gas Light Company. For the Terminal he does line and electrical work, cable work, sets poles, hangs transformers and assists in maintaining the distribution of electricity to the signal towers. On October 22, 1951, the electrical foreman instructed Joe, as lead man of a six-man crew, to get three transformers from the shop at Twentieth and Market Streets, load them on a truck and unload them on the sidewalk at the third pole on Fourteenth and Poplar Streets. At some future time they were to be placed in the diesel house nearby. One of the trans-

formers weighed 1000 pounds, another 500 pounds, and the third 300 pounds. The truck stopped beneath the pole where they were to be unloaded. They were to be lowered from the truck to the sidewalk by means of a block and tackle attached to the light pole. Joe, being the only lineman, fastened on his climbers and safety belt, took his hand line, all of which he personally furnished, climbed the pole and fastened the block and tackle in the desired position on the pole, the five lines, particularly the fall line, dangling down the side of the pole. As he was descending the pole with his climbers and was twelve to fifteen feet from the ground the spur on his left climber "broke out" and he fell to the ground and was injured.

In his petition and his separate instructions to the jury Joe alleged and hypothesized two grounds of negligence, both having to do with the defendant's failure to furnish a reasonably safe place to work and reasonably safe appliances. One instruction, the second, stated the defendant's duty to furnish a reasonably safe place to work, it set forth the task to be performed and Joe's part in accomplishing it—that is the climbing of the pole and the fastening of the block and tackle for the purpose of lowering the transformers from the truck. The instruction then hypothesized the fact of the ropes hanging down alongside the pole and that as he descended he called out to his fellow workers to hold the ropes away from the pole so as not to interfere with his descent. Nevertheless, unknown to him in time, a rope came in contact with the pole at the precise point he placed the spur into the pole, causing the spur to break out and him to fall. The first instruction hypothesized the defendant's liability upon a finding that the manner or method by which he was directed to unload the transformers was not a reasonably safe method because the pole was an exceedingly hard pole and on this occasion was wet and slippery, as the defendant could have known, and that there was at the time available to the defendant another reasonably safe method of unloading the transformers—the use of a derrick.

Upon the essential merits of the appeal the Terminal urges that its motions for a directed verdict should have been sustained as to both charges and hypothesizations for the reason that the plaintiff's evidence was insufficient to support the inference and finding of negligence in either respect. In this connection it is urged that the court prejudicially erred in giving the jury instructions one and two for the reason that there was no evidence to support either theory of negligence and as to the second theory it is also urged that there is no evidence from which the inference could be drawn that failure to use a derrick was the proximate cause of the plaintiff's injury. And in connection with the second theory it is said that the court prejudicially erred in permitting an expert witness called by the plaintiff to express the opinion that the use of a block and tackle was "extremely dangerous."

But, as to instruction two and its hypothesis, this case is unlike the F.E.L.A. cases of Tankersley v. Southern Ry. Co., 73 Ga.App. 88, 35 S.E.2d 522, 524; Southern Ry. Co. v. Bradshaw, 73 Ga.App. 438, 37 S.E.2d 150, and Southern Ry. Co. v. Bradshaw, 76 Ga.App. 364, 45 S.E.2d 693. In the Tankersley case a lineman fell when his climber spur "broke out" upon being stuck into a weather crack in a pole. It was pointed out that there was no claim of a defect in the climber, there furnished by the employer, or that the pole was rotten or defective in any respect other than the crack, and it was emphasized that it was a part of the plaintiff's duties to maintain the lines and in so doing to climb poles with the climbers. In these circumstances the Georgia court concluded that Tankersley's petition, "construed most strongly against the plaintiff," failed to show that the injuries sued for were caused by any negligence on the part of the defendant "but clearly shows that the injuries resulted from the plaintiff's negligence alone." In the

Bradshaw cases an experienced signal maintainer relied upon the fact that his employers ·had furnished him "pole hooks" (climbers) instead of "tree hooks" with which to climb a tree, tree hooks being made with much longer spurs that would penetrate the hard bark of trees and not "break out" so easily. It was also claimed that the employer was negligent in not furnishing a ladder rather than the pole climbers. It was held, as against a demurrer, that the petition charged negligence on the part of the railroad consisting in its failure to provide the plaintiff with reasonably safe tools and appliances. But it was held, granting that tree hooks with longer spurs were superior devices for tree climbing, that "such evidence does not show that regular pole hooks are not reasonably safe and suitable for the use intended, or that the defendant was negligent in furnishing them to its signal-system employees." It was also pointed out, as the appellant emphasizes here, that the employer was not bound to furnish the latest or best appliances for the use of its employees, and it was held that the evidence did not support the verdict for the plaintiff and his judgment was reversed.

But in this case, in addition to the pole's being exceptionally hard and wet and the climber breaking out, it was hypothesized that one of the ropes dangling alongside the pole became caught in the spur, or between the spur and the wood, and thus the spur was caused to break out and Joe to fall. The electrician's helper testified that it was a part of his and the crew's duty to hold the ropes out from the pole so that they would not interfere with the lineman's descent. He heard Joe "holler down" about the ropes; he looked up and saw the hand line (the line furnished by Joe) "hanging back," and so he took the hand line and held it away from Joe's back, the pole and the climbers. Brown and Smith were on the truck putting a sling around one of the transformers. Edwards was the truck driver and not concerned. The helper, McEvoy, said, contrary to Thomas' testimony for the defendant that he held the fall line,

that .Thomas did not hold any of the five ropes connected with the block and tackle, particularly the fall line, away from the pole. In fact this witness said that he was looking and he saw the fall line hanging down on the east side of the pole, Joe was descending on the south side, the other four ropes hanging down on the north side. Joe testified that when he was about three-quarters of the way down, and after he had told ·his fellow crew members to hold the ropes out, he "felt something on my foot there—see," and then he "couldn't get in and I broke out." At that moment he looked down and saw "that inch rope" dangling on the pole, it was "inside of my left foot" right at the instep. In these circumstances the jury could find that the spur was caused to "break out" by reason of his fellow employees' failure to heed Joe's warning and their duty with respect to holding the ropes away from the pole (Howard v. Missouri Pac. R. Co., Mo., 295 S.W.2d 68, 72) and the inference and finding of proximate cause and consequent negligent injury was a matter upon which reasonable minds could differ; the proof supports the hypothesis of the instruction, and was for the jury's determination. Schillie v. Atchison, T. & S. F. Ry. Co., 8 Cir., 222 F.2d 810; Wiser v. Missouri Pac. R. Co., Mo., 301 S.W.2d 37.

■ The first and alternative hypothesis is not entirely free from difficulty (Louisville & N. R. Co. v. Davis, 6 Cir., 75 F.2d 849), but in view of our disposition of the appeal it is not necessary to determine the matter definitively. That there are alternative methods of performing a task is certainly a relevant circumstance to be considered in determining what a reasonable and prudent employer should have done in the circumstances (Stone v. New York, C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441), and it is assumed for the purposes of this opinion that failure to use an available derrick as contrasted with the use of a block and tackle, in the particular circumstances, is sufficient to support the inference of breach of duty with respect to furnishing reasonably safe appliances and a

safe place to work. Spencer v. Quincy, O. & K. C. R. Co., 317 Mo. 492, 297 S.W. 353; Perryman v. Missouri Pac. R. Co., 326 Mo. 176, 31 S.W.2d 4; Rogers v. Missouri Pac. R. Co., 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511.

In connection with both issues the plaintiff called two expert witnesses. Particularly in connection with the testimony of one of the witnesses the appellant contends that the court prejudicially erred; in substance, the conventional assignment is made that a certain answer or statement by the witness "was a prejudicial comment on the issues to be determined, and it invaded the province of the jury." The first witness, an architect and engineer, qualified as being familiar with wood. He examined and took samples from the pole from which the plaintiff fell and from an adjacent pole. It was his opinion that the pole from which the plaintiff fell was a "hard" pole, certainly so when compared to the adjacent pole, and that climber spurs would not readily go into the hard pole. The second witness was presently engaged in the real estate business; previously he had been a contractor, "excavators, heavy haulers and hoisters and-so-forth." He had seen and could identify the Terminal's forty-five ton locomotive crane and understood its function and operation. It was his expert opinion that the locomotive crane could have been placed on a spur near the truck and that the three transformers could have been lifted from the truck by means of its crane and boom. Plaintiff's counsel then elicited from the witness that he had been in the courtroom and heard the testimony of the witnesses up to that point; these included, except for a custodian of the hospital records, the plaintiff and the other expert witness, the helper, McEvoy, had not then testified. Counsel then asked the witness "whether or not it would have been a safer method to take the crane or derrick that you saw there (in a photograph), place it on one of these tracks, swing the boom around, lower the hook, and pick up the transformers, take them off the truck and put them on the sidewalk or to send this—then plaintiff in this case up this pole, pole #3, with hooks which you have heard identified in this case, * * *." There was an interpolation as to whether the witness knew what a block and tackle and a sling were. Then the witness was asked, "first of all, have you an opinion as to whether or not it would have been a safer method?" He answered, "Yes." Then the question was, "All right. Will you state that opinion to the Court and to this jury and give your reasons for such?" Defense counsel objected that the question did not call for or apply the proper test upon which the case was to be determined. The court overruled the objection and the witness promptly made this statement or answer, "Well, my opinion is to unload anything that weighs over 300 or 400 pounds, it is a lot easier to handle with a hoist or a crane or a boom of some type than it would be to have a man climb a pole when it is raining and tie some ropes, and hang a hook up there, *and endanger his life, which would be an extremely dangerous, to my opinion, as to have a man go up a pole and hang up there while it is raining and tie ropes. Ropes are slick, the pole is slick, the gloves are slick*. It would be a lot easier to take a crane, any type of crane, to unload those transformers." As soon as the witness completed this statement plaintiff's counsel said, "You may inquire." Defense counsel immediately asked plaintiff's counsel to come up to the bench and, out of the hearing of the jury, moved to strike the answer of the witness for the reasons that the answer was argumentative, highly prejudicial, had nothing to do with the issues and "encompasses matters that are not determinative as to whether or not the defendant is negligent." He again said that the statement was prejudicial and asked for a mistrial. The court inquired in what respect the statement was prejudicial and defense counsel said, "The argument that he put forth." The court had the answer read and defense counsel again expressed his opinion that the statement was prejudicial saying, "He is just arguing the whole

case, and he is invading the province of the jury." There was an interpolation concerning an ill juror and the court said, " * * * the objection as I understand it is based on this man's opinion answer being highly prejudicial and whatever other objections you had to it, and I am overruling it for the reason that after the witness has answered, whatever his answer might have been, *in my opinion I don't think it is prejudicial except the one remark about putting a man's life in danger; that might be a conclusion on his part.*" Plaintiff's counsel then said, "I would like the record to show the witness had completed his answer, that I said I had no further examination, and I then turned the witness over to Mr. Sheppard before he objected." The court said, "I think that is what happened. I don't think I am in position to do anything about it at this time." Mr. Sheppard said, "I was not in position to do anything about it before, and I couldn't anticipate what he would say, of course. I think it all should be stricken." The appellant's assignment of error here, of course, is directed to the italicized portion of the answer which the appellant contends invades the province of the jury and was therefore prejudicially erroneous.

The sequence of events leading up to the statement by the witness and the subsequent objection have been set forth and it is not necessary to repeat and demonstrate; it is sufficient to say, while the precisely proper objection was slow in coming, the objection was as timely as it could have been in the circumstances. Kansas City v. Thomson, Mo., 208 S.W.2d 216, 220. The court understood the objection and the precise point involved as indicated by the statement that it was not prejudicial "except the one remark about putting a man's life in danger." And, of course, there were several things the court could have done even after a belated objection. Instead of doing any of them or taking such initial action as might call for further objection or other requests for affirmative action, the court inferentially added its stamp of approval and indicated that further objection would have been useless. The meritorious question is whether the answer was so prejudicial as to demand the granting of a new trial. V.A.M.S. § 512.160; Atlantic Coast Line R. Co. v. Sweat, 5 Cir., 183 F.2d 27.

As the respondent urges, the rule excluding the opinions of expert witnesses as invading the province of the jury, at least those conclusions said to be determinative of the "ultimate fact in issue" (32 C.J.S. Evidence §§ 446, p. 74, 448, p. 82; 20 Am. Jur., Secs. 798, p. 670, 819, p. 689), has indeed "undergone a change of view," particularly in Missouri. Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W. 2d 122; Bedenk v. St. Louis Public Service Co., Mo., 285 S.W.2d 609, 615; Allen v. St. Louis Public Service Co., Mo., 285 S.W.2d 663, 668; Dickerson v. St. Louis Public Service Co., Mo., 286 S.W.2d 820, 826. The Allen and Dickerson cases may be distinguishable from the Eickmann case, but whether the Eickmann case overruled all the other Missouri cases on this subject (as Dean Wigmore advocated should be done, 7 Wigmore, Evidence, Sec. 1929, p. 27) remains to be seen. In all these recent cases the expert was a medical witness, qualified to give evidence on the precise question involved. Nevertheless, it is not possible and it is not necessary to attempt a reconciliation of the Missouri cases or the establishment of a delimiting rule. The Missouri cases are collected in the annotations, 78 A.L.R. 755, 146 A.L.R. 5, and the notes in 7 Wigmore, Evidence, Secs. 1917–1929. These latter cases do suggest the query whether the opinion that one is or is not "feigning," "simulating" or "a malingerer," is in fact an expression of belief as to how the case should be decided or as to the amount of damages which should be recovered. McCormick, Evidence, Sec. 12, p. 25; 26 Ia. L.R. 819; Butner v. Union Pac. R. Co., 236 Mo.App. 1134, 163 S.W.2d 100. But it is not necessary to turn this particular case solely on the narrow ground that the answer invades the province of the jury.

There was no objection to the qualifications of this witness, nevertheless, his qualifications were not conspicuously impressive. As we understand the record, this witness was called and qualified as an expert on two particular subjects, the hardness of the pole, and as a heavy hauler and hoister precisely upon the issue of whether there was another feasible, practicable method of unloading the transformers. As to the latter, he said there was, a derrick, and it is in these two respects that there was no objection to his qualifications. It is not briefed and argued here as one of the assignments of error that he was not qualified to express an opinion upon the safety or danger involved in unloading the transformers by means of a block and tackle. But it is a relevant circumstance that the witness was not an electrician or a lineman, and, if it is a subject permitting of expert testimony, he obviously was not qualified or called to say whether the use of a lineman, a crew of workmen, and a block and tackle, was a usual or an appropriate method of unloading transformers and whether that method was dangerous. In this regard the witness, whether his qualifications were objected to or not, did not have "something different to contribute. This is a power to draw inferences from the facts which a jury would not be competent to draw." McCormick, Evidence, Sec. 13, p. 28. It does not appear that he had any more information or knowledge on this subject than the jury had from the two witnesses and from their own observations.

Upon the issue of an alternative method of unloading the transformers the witness purported to possess some firsthand information and experience but he was in fact testifying hypothetically and the precise question was whether it was a safer method to use a derrick rather than a lineman and a block and tackle. In answering that question and giving his reasons he gratuitously and, as far as appears, unexpectedly expressed the opinion that the use of the lineman and block and tackle was "extremely dangerous" and "endangered his (the plaintiff's) life." It does not appear upon this specific subject, the relative safety or danger involved in the use of a lineman and a block and tackle, that there was any necessity for expert or opinion evidence or that it could be helpful to the jury. McCormick, Evidence, pp. 26–27; 7, Wigmore, Evidence, Sec. 1918, p. 10. While they may not have given particular attention to specific detail, all the members of the jury panel have observed, with fascination, linemen lowering and raising objects, including transformers, to and from poles, and from a mere recitation of the facts were as capable of forming and expressing an opinion as to the danger involved as was this witness. Crews v. Illinois Terminal R. Co., Mo.App., 260 S.W.2d 765; Brown v. Adams Transfer & Storage Co., Mo.App., 31 S.W.2d 117; Kelpy v. Triest, 73 App.Div. 597, 76 N.Y.S. 742; 35 Am.Jur., Sec. 512, p. 936. Compare: Carver v. Missouri-K.-T. R. Co., 362 Mo. 897, 245 S.W.2d 96.

Other than a recitation of the facts by the plaintiff there had been no other testimony on the subject and so the opinion testimony was not merely cumulative and therefore to be deemed harmless. Wawryszyn v. Illinois Central R. Co., 10 Ill.App. 2d 394, 135 N.E.2d 154. Admittedly, the trial court is invested with a certain amount of discretion in the admission and exclusion of opinion evidence (Eickmann v. St. Louis Public Service Co., supra), but here the court, by its own statement, did not exercise its discretion; the court was of the view that this particular statement was prejudicial but felt that there was nothing that could be done about it at that time.

Considering the qualifications of the witness upon the particular subject, the manner in which the whole matter arose and was handled, the fact that the jury had all the relevant facts and was fully capable of assessing them without specialized aid and, finally, the fact that the gratuitously expressed statement was in effect an opinion upon the hypothesized is-

sue that the defendant was negligent and that plaintiff should recover, the admission of the categorical opinion was erroneous and so prejudicial as to demand the granting of a new trial. The opinion was lacking in solid foundation and probative force, likely to be misleading and confusing. Nelson v. Brames, 10 Cir., 241 F.2d 256; Baptiste v. Boatman's Nat. Bank of St. Louis, Mo., 148 S.W.2d 743; Crews v. Illinois Terminal R. Co., supra; Wawryszyn v. Illinois Central R. Co., supra; McCormick, Evidence, Sec. 12, p. 25.

It is not necessary to a disposition of this appeal to consider whether there were other prejudicial errors in either the instructions upon the defendant's duty or in counsel's conduct and argument. For the reason indicated, the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.