

# SUPREME COURT OF MISSOURI
## en banc

RAFAEL LOZANO, )
)
    Appellant, )
)
       v. ) No. SC92996
)
BNSF RAILWAY COMPANY, )
)
    Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Jack R. Grate, Jr., Judge

### *Opinion issued February 4, 2014*

Rafael Lozano appeals from a judgment in favor of BNSF Railway Company

("BNSF") on Lozano's negligence claims under the Federal Employers' Liability Act

("FELA"). This Court granted transfer pursuant to Rule 83.04 and has jurisdiction of the

appeal. Mo. Const. art. V, § 10. Lozano asserts three claims of error relating to the trial

court's exclusion of evidence at trial. Finding no abuse of discretion in the trial court's

evidentiary rulings, the Court affirms the judgment in all respects.

## *I. Facts*

Lozano worked for BNSF for 33 years, including 29 years as an electrician. At

the time of his injury, Lozano worked at a BNSF service facility located next to the rail

yard in Argentine, Kansas. His job was to inspect locomotives in the service facility to

see that they were ready to return to service. To ensure that a locomotive was "lead qualified," i.e., ready to take the lead position in a train and be staffed by a train crew, Lozano was required to inspect for and remedy the potential hazards or defects identified on the "lead qualified" checklist.

According to this checklist, Lozano was to identify and remove any loose articles in the cab of the locomotive that could interfere with the engineer's duties or cause an injury in the event of a collision. Among the items Lozano frequently had to move were end-of-train devices ("ETDs")[1] left behind in locomotive cabs. When a BNSF train is dismantled in the Argentine yard, the ETD is supposed to be removed from the rear car and placed on a rack outside the service facility until it is needed on a newly assembled train. Occasionally, however, members of the crew dismantling a train will disconnect an ETD and place it in the cab of the locomotive instead of on the rack. It was undisputed that ETDs do not belong in locomotive cabs and that locomotives cannot be lead qualified unless and until ETDs are removed from the cabs. Lozano testified that he removed ETDs from locomotive cabs approximately twice each week, or nearly 2,900 times during his career. Lozano admitted that he never injured himself moving an ETD from a locomotive cab before, and there was no evidence presented that any employee ever had been injured doing so.

Lozano testified that in May 2007 (he could not recall the exact date), he was assigned to lead qualify a locomotive and discovered two ETDs wedged behind a

---

[1] An ETD is a device placed on the end of the last car in a train when there is no caboose. It is a metal box, several feet long, weighing approximately 40 pounds. Each ETD contains a battery and has hoses and other connectors to provide feedback to the engineer regarding the brakes.

refrigerator in the locomotive cab. Neither Lozano nor any of the other employee witnesses ever had discovered ETDs in that position before. To remove them, Lozano was required to bend awkwardly over the refrigerator and lift them using only his arms and back. Lozano testified that, when he did so, he felt a sharp pain in his groin as he began to lift the ETDs. The pain subsided after only a few minutes, and Lozano was able to finish his shift. Lozano admits that he did not report this injury or seek medical care for it at that time. Some time later, Lozano was attempting to disconnect a snow plow on a locomotive and felt the same pain in his groin, only worse. Lozano later saw a doctor for the pain and, on June 25, 2007, had outpatient surgery to repair an inguinal hernia. Lozano sued BNSF for damages relating to this injury.

## II. Standard of Review

A trial court "enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (quotation marks excluded).[2] It abuses this discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks

_____

[2]  Lozano concedes that abuse of discretion is the proper standard of review for claims involving "ordinary" evidence but argues that *Kivland v. Columbia Orthopaedic Group, LLP,* 331 S.W.3d 299, 311 (Mo. banc 2011), requires this Court to conduct a *de novo* review of trial court rulings excluding expert testimony. This is not correct. A *de novo* review was appropriate in *Kivland* only because the Court was reviewing the lower court's construction of section 490.065, RSMo 2000, not because all evidentiary rulings regarding expert testimony are necessarily questions of law. In addition to determining whether the factors stated in section 490.065 are present, admission of expert evidence requires the trial court to apply the same standards for relevance and admissibility that apply to other types of evidence. The trial court's navigation of such waters is entitled to substantial deference regardless of the type of evidence being offered. *See Stone v. Missouri Dept. of Health and Senior Services,* 350 S.W.3d 14, 21 (Mo. banc 2011) (holding that the trial court has "discretion to determine the 'necessity' of the expert testimony").

the sense of justice and indicates a lack of careful, deliberate consideration." *In re Care & Treatment of Donaldson*, 214 S.W.3d 331, 334 (Mo. banc 2007). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013) (quoting *Donaldson*, 214 S.W.3d at 334). Moreover, "it is well settled that if the action of the trial court was proper on any ground, although not asserted, such action will be upheld." *Franklin v. Friedrich*, 470 S.W.2d 474, 476 (Mo. 1971). As a result, "it is immaterial on what ground the objection or ruling was made or whether such ground is good; and the sufficiency of the reason need not be considered." *Id.* (quoting 5 C.J.S. Appeal & Error § 1464(3)).

Even if the trial court has abused its discretion in excluding evidence, this Court is loathe to vacate a jury's verdict and resulting judgment on such grounds. *Lewis v. Wahl*, 842 S.W.2d 82, 84-85 (Mo. banc 1992) ("question of error does not resolve the question of whether reversal is mandated"). Instead, "[b]y both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the action." *Id. See also Sorrell v. Norfolk S. Ry. Co.*, 249 S.W.3d 207, 209 (Mo. banc 2008) (affirming FELA judgment in which instructional error was harmless). An erroneous evidentiary ruling warrants reversal, therefore, only when it "affects the result or the outcome of the case," *Moore*, 332 S.W.3d at 768 n.12, and "exclusion of evidence which has little, if any, probative value is usually held not to materially affect the merits of the case and hence, error in rejecting such evidence is not grounds for reversal," *Lewis*, 842 S.W.2d at 85.

4

*III. Analysis*

Lozano's petition alleges that he "was required to lift, manhandle, and carry very heavy" ETDs and that he was injured when he was "forced to carry the devices alone and without mechanical assistance[.]" Lozano alleges that BNSF was negligent in failing to provide him with: (1) reasonably safe tools and equipment for his tasks, including for lifting; (2) adequate help in performing his tasks; (3) reasonably safe methods of or conditions for performing his tasks; and (4) adequate supervision as he performed his tasks. At trial, Lozano argued these same claims to the jury. The jury rejected Lozano's claims, however, and returned a verdict for BNSF. On appeal, Lozano argues that the trial court erred in excluding certain evidence and that had this evidence been admitted, the outcome of his trial would have been different.[3]

### A. *Lozano's Excluded Evidence*

At trial, Lozano sought to introduce evidence to show: (1) that ETDs should not be stored in a locomotive's cab because they could be stored more safely in the locomotive's compressor compartment; and (2) that ETDs in a locomotive cab pose a tripping (or other) hazard to train crews. When the trial court sustained BNSF's objections to this

---

[3] On appeal, Lozano attempts to recast both his claims against BNSF and the bases on which he claims his proffered evidence should have been admitted. Lozano now argues that the "theory of negligence [he] sought to present at trial was that the ETDs should not have been in the locomotive cab in the first instance because their presence in the cab required [Lozano] to remove the ETDs from the cab as ordered by his supervisors to lead qualify the locomotive[.]" This is not the claim that Lozano pled, however, nor is it the claim that he tried. Moreover, Lozano cannot argue that this new theory was tried by consent because BNSF objected to the excluded evidence in part on the ground that it was beyond the scope of the pleadings, and Lozano neither asked for nor obtained leave of the trial court to amend his pleadings to conform to the proffered evidence under Rule 55.33(b). *Bone v. Dir. of Revenue*, 404 S.W.3d 883, 886 (Mo. banc 2013).

evidence, Lozano made an offer of proof detailing the testimony that he and three other

witnesses would give to establish these facts.  In addition to their factual testimony,

Lozano insisted that under section 490.065, RSMo 2000, he and two other employee

witnesses should have been allowed to offer expert opinions on these issues.

### 1. Unused ETDs Need Not be Stored in Locomotive Cabs

Lozano claims that the trial court erred by excluding evidence that ETDs should

not be stored in locomotive cabs because they can be stored more safely in the

locomotive's compressor compartment.[4]  To support this claim, Lozano cites cases

holding that, under FELA, evidence of alternative methods for performing the task in

which the employee was injured may be admitted to show that the railroad was negligent

in requiring the employee to perform that task using the method that caused the injury.

*See, e.g., Schroeck v. Terminal R. R. Ass'n of St. Louis,* 305 S.W.2d 18, 21 (Mo. 1957)

("that there are alternative methods of performing a task is certainly a relevant

---

[4]  Lozano dedicates a substantial portion of each of his points on appeal (and much of his brief) to his claim that the trial court erred in granting BNSF's pre-trial motions *in limine* regarding the excluded evidence.  "A motion *in limine*, by itself, preserves nothing for appeal." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003).  To pursue a claim of evidentiary error on appeal, a party must do four things, two at the trial court and two on appeal.  First, the party must raise the claimed error in a timely fashion, which means (when the claim is that the trial court improperly excluded evidence) that the proponent must offer the evidence at trial and make a detailed offer of proof concerning that evidence when the trial court orders that it be excluded. *Id.*  Second, the party must preserve that claim by including it in its motion for a new trial.  Rule 78.07; *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 447 (Mo. banc 1998).  Third, the party must present this claim in a proper point relied on in the appellate brief.  Rule 84.04; *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).  Finally, the party must provide a sufficient argument on that point in the party's brief.  *Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 499 (Mo. banc 1995).  Here, Lozano fulfilled these predicates, but only regarding the evidentiary ruling actually made at trial.  Accordingly, this Court will not address his arguments regarding the trial court's advisory rulings on BNSF's pre-trial motions *in limine*.

circumstance to be considered in determining what a reasonable and prudent employer should have done in the circumstances"); *Stone v. New York, C. & St. L. R. Co.*, 344 U.S. 407, 409 (1953) (same).

In addition to authority allowing evidence of alternative work methods, Lozano also relies on cases holding that evidence of alternative work conditions may be admitted in a FELA action to show that the railroad was negligent in requiring the employee to work in the conditions that caused the injury. *Elliott v. St. Louis Southwestern Ry. Co.*, 487 S.W.2d 7, 13, 15-16 (Mo. 1972). Finally, Lozano notes that FELA does not require the employee to prove that the railroad knew about the safer work methods or conditions before evidence of such alternatives may be admitted to prove that the railroad was negligent in insisting upon the methods actually required or the conditions actually endured. *See, e.g., Cleghorn v. Terminal Railroad Association of St. Louis*, 289 S.W.2d 13, 18 (Mo. 1956) (railroad could be negligent for failure to provide reasonably safe work conditions by failing to light switchstand, even without evidence that such lighting was practicable or commonly used).

Lozano's abstract statements of law are correct as far as they go, but they have no application to his case. Lozano's excluded evidence does not purport to demonstrate alternative methods of moving these ETDs from the locomotive cab that would have allowed him to perform this task without injury or alternative conditions in which Lozano could have performed this task and not been hurt. Instead, Lozano's excluded evidence shows only that ETDs should not be stored in locomotive cabs – a fact that BNSF did not dispute. There simply was no dispute at trial over whether BNSF permitted ETDs to be

stored in locomotive cabs.  Lozano readily concedes (and the record confirms) that it

"was undisputed that [he] was required to remove any ETDs he found in locomotive cabs

in order to lead qualify the locomotive" and that he "was required to remove the ETDs

from the cab in order to perform his assigned duties."  BNSF not only instructed Lozano

to remove all ETDs from locomotive cabs, but it also provided a storage rack for unused

ETDs in the rail yard where they should be stored until needed.  More importantly,

Lozano did not claim that BNSF was negligent for storing ETDs in locomotive cabs, and

he cannot argue now that his evidence should have been admitted on that basis.[5]

Accordingly, Lozano's proffered evidence that ETDs should not be stored in locomotive

cabs was not relevant to any disputed issue and, therefore, properly could have been

excluded on the ground that it might distract or confuse the jury.

Lozano's reliance on *Schroeck* and *Stone* do not alter this result.  To be sure, the

rationale of these cases might have allowed Lozano to introduce evidence of an

alternative method for removing ETDs from a locomotive cab safely (e.g., a mechanical

hoist or additional employees to help lift) as a means of showing that BNSF was

---

[5]  When a trial court admits evidence over objection, an appellant seeking to challenge that ruling "may not broaden the objection presented to the circuit court."  *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012).  The converse of this rule applies when an appellant seeks to challenge a trial court's decision to exclude evidence after a show of proof.  *Hess v. Chicago, R. I. & P. R. Co.*, 479 S.W.2d 425, 432 (Mo. 1972) ("A party on appeal is held to the theory of his offer of proof, if the evidence has been excluded," and may not argue admissibility on grounds not offered when the evidence was excluded).  These two rules act in concert to protect the boundaries of Rule 84.13(a), which provides that "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case."  Accordingly, this Court will not entertain on appeal theories of relevance that were not presented at trial because the "appellant is limited to the reason he gave at the time he made the offer of evidence."  *Atherton v. Kansas City Pwr & Light Co.,* 202 S.W.2d 59, 64 (Mo.1947) (quotation marks omitted).

8

negligent for failing to provide Lozano with a safe method for doing so. But Lozano's evidence was not offered to show – and does not show – any alternative method for moving ETDs. Instead, as discussed above, Lozano's evidence only shows that, while a locomotive is in use, *storing* ETDs in the locomotive's compressor room was a safer method than *storing* ETDs in the locomotive's cab. Lozano did not claim that BNSF was negligent because of the way it stored these ETDs; he claimed that BNSF was negligent for not giving him a method to move them.

Accordingly, Lozano's evidence was not relevant to the unsafe work methods claim he pled and tried in the trial court because it only showed ***where*** Lozano should have put the ETDs after he removed them from the locomotive's cab. No matter where these ETDs should have been stored once Lozano removed them from the cab, whether in the locomotive's compressor room or on the rack designated for them in the yard (or somewhere else), that destination had nothing to do with whether BNSF was negligent for failing to provide Lozano with a safe method of moving them there. It was the act of moving these ETDs, not their proper destination, that Lozano claims injured him. And it was the method that BNSF required Lozano to use in moving them – not their proper destination – that Lozano claims rendered BNSF negligent. Because Lozano's evidence failed to demonstrate that a safe alternative method for moving these ETDs was possible, it was not relevant to BNSF's alleged negligence under the rationales articulated in *Schroeck* and *Stone*.

By the same token, Lozano's reliance on *Elliot* and *Cleghorn* also is misplaced. Under these cases, evidence that the conditions in which Lozano tried to move these

9

ETDs were unreasonably dangerous (e.g., the floor was slippery, the lighting was insufficient, etc.) and that safe conditions were possible might have been admissible to show BNSF's negligence for failing to provide safe work conditions. As above, however, Lozano's evidence that ETDs should not be stored in locomotive cabs (or that they could be stored more safely in the locomotive's compressor room) had nothing to do with showing that the conditions in which he moved the ETDs were unsafe and that safe, alternative conditions were possible.

Lozano argues that the unsafe condition in this case was the ETDs themselves and, therefore, BNSF was negligent for failing to provide a safe work condition (i.e., a locomotive cab with no ETDs in it). As above, however, this argument ignores the fact that BNSF did not allow ETDs in locomotive cabs and that it was Lozano's job to move any that he found there. More importantly, this is not the claim that Lozano pled and that he tried (and lost) before this jury. Because Lozano's evidence failed to demonstrate that the conditions in which he was required to move these ETDs were unreasonably dangerous and that safe, alternative conditions were possible, the evidence was not relevant to his claim that BNSF was negligent for failing to provide safe work conditions. Accordingly, Lozano's evidence was not admissible under the reasoning of *Elliot* or *Cleghorn*.

Because Lozano's proffered evidence that unused ETDs should be stored in the locomotive's compressor room and not in the locomotive's cab was not relevant to

Lozano's claim that BNSF failed to provide safe work conditions for moving those ETDs, the trial court did not abuse its discretion by excluding it.[6]

## 2. *Storing ETDs in Locomotive Cabs is Hazardous*

Lozano also claims that the trial court erred in excluding his evidence that ETDs could constitute a tripping (or other) hazard in locomotive cabs because such evidence tended to show that BNSF was negligent for requiring Lozano to work in locomotive cabs under unsafe conditions (i.e., with ETDs present).

Again, this evidence served only to explain *why* BNSF did not allow ETDs in locomotive cabs and *why* it required Lozano to remove them. But Lozano testified that he "was required to remove the ETDs from the cab in order to perform his assigned duties," and he concedes that it "was undisputed that [he] was required to remove any ETDs he found in locomotive cabs." Further explanation concerning BNSF's motive for not allowing ETDs in locomotive cabs risked confusing the jury about an irrelevancy.

---

[6]  Like Lozano, the dissenting opinion contends that this evidence should have been admitted because, if the ETDs had not been present, Lozano would not have injured himself. In support, the dissenting opinion cites cases referring to the duties railroads owe their employees and the minimal causation standard employed in FELA cases. This analysis omits the concept of breach, however. BNSF doubtless owed Lozano a duty to provide him with safe work conditions and methods, but the issue at trial was whether and how BNSF failed in that duty. The only breach of duty (i.e., negligence) that Lozano pled and argued to the jury was that BNSF failed to provide him with safe methods and conditions for *moving these ETDs*. He did not plead that BNSF was negligent for requiring him to move the ETDs regardless of the methods or conditions. As explained above, therefore, Lozano cannot argue a theory of relevance on appeal that he did not advance in the trial court. *Atherton*, 202 S.W.2d at 64 ("Whether or not the [evidence was relevant] for other reasons need not be discussed, since appellant is limited to the reason he gave at the time he made the offer of evidence.") (quotation marks omitted).  To allow Lozano to do so would violate the principle "that this Court will not, on review, convict a lower court of error on an issue which was not put before it to decide." *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982).

11

This risk was intolerable in that there was no counterbalancing benefit to admitting this evidence. Explaining why ETDs in a locomotive cab could be dangerous when the locomotive returns to service was not relevant to Lozano's claims that BNSF was negligent for failing to provide Lozano with safe methods and safe conditions for moving them. Accordingly, the trial court's decision to exclude Lozano's evidence that ETDs posed a tripping (or other) hazard in the locomotive cab was not error.

### 3. "Expert" Testimony

Finally, Lozano claims that some of the excluded evidence was expert opinion testimony that should have been allowed under section 490.065, RSMo 2000. For the reasons stated above, however, the evidence was not relevant to Lozano's claims that BNSF was negligent for failing to provide safe methods or conditions for moving these ETDs. Accordingly, the trial court did not abuse its discretion by excluding Lozano's evidence, whether that evidence consisted of testimony regarding facts or expert opinions. The trial court need not have reached – and this Court does not reach – the question of whether evidence regarding an alternative storage location for ETDs and the reasons why ETDs should not be stored in locomotive cabs were proper subjects for expert testimony or the question of whether Lozano and his co-workers were qualified by way of their experience or expertise to opine on such issues.

### B. Prejudice

As set forth above, the Court finds no error in excluding Lozano's proffered evidence because it risked confusing the jury about an irrelevant matter and was not relevant to BNSF's negligence under the theories that Lozano pled and tried. Even if the

Court assumes that this evidence was relevant to some other disputed issue (e.g., foreseeability of harm), the Court concludes that any error in excluding this evidence could not have been sufficiently prejudicial to merit reversal. As noted above, Lozano was unable to recall the date on which the alleged injury moving the ETDs occurred. Several days (or more) passed between this injury and Lozano's first reporting it to anyone or seeking medical assistance for it. Finally, between the uncertain date of this injury and the date Lozano first reported it, Lozano admits he was injured attempting to adjust a snow plow. Accordingly, Lozano may well have failed to persuade the jury that his attempt to move these ETDs played any part at all in causing the hernia that Lozano had repaired at the end of July 2007.

Even if the Court assumes, further, that Lozano did succeed in persuading the jury that his hernia was caused (at least in part) by his attempt to move these ETDs, the Court cannot conclude that Lozano's claims that BNSF was negligent for failing to provide him with safe work conditions or safe methods for moving these ETDs were so compelling that the single addition of this excluded evidence on a relatively uncontested issue like foreseeability would have changed the jury's verdict. This is particularly so in light of the Court's conclusion, explained above, that there is no connection whatsoever between the excluded evidence and the theories of unsafe work conditions and unsafe work methods that Lozano pled and tried to this jury. *See Lewis*, 842 S.W.2d at 85 ("exclusion of evidence which has little, if any, probative value is usually held not to materially affect the merits of the case and hence, error in rejecting such evidence is not grounds for

13

reversal").  Accordingly, even if there had been error – and there was not – any such error

doubtless would have been harmless and an insufficient basis to remand for a new trial.

*IV.  Conclusion*

For the reasons set forth above, the judgment is affirmed in all respects.


_____
Paul C. Wilson, Judge



Russell, C.J., Breckenridge, Fischer and Stith, JJ., concur;
Draper, J., dissents in separate opinion filed;
Teitelman, J., concurs in opinion of Draper, J.

14



# SUPREME COURT OF MISSOURI
## en banc

RAFAEL LOZANO, )
                                   )
    Appellant, )
                                   )
       v. )          No. SC92996
                                   )
BNSF RAILWAY COMPANY, )
                                   )
    Respondent. )

## DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial court abused its discretion in failing to admit the excluded evidence. During trial, Lozano attempted to present evidence that the ETDs could have been stored in an alternative location on the locomotive, securing them in a manner that would prevent injury and allow the locomotive to be lead qualified. Lozano was prevented from fully developing and presenting his case to the jury. Accordingly, I would reverse the judgment of the trial court and remand for a new trial.

In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused plaintiff's injury. *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008). A "FELA case should be submitted to a jury if there is any

evidence, however slight, to support the employer's negligence." *Rice v. BNSF Ry. Co.*, 346 S.W.3d 360, 368 (Mo. App. S.D. 2011) (quoting *Ramsey v. Burlington Northern & Santa Fe Ry. Co.*, 130 S.W.3d 646, 651 (Mo. App. E.D. 2004)); *see also CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2643 (2011) (citations omitted). "It does not matter that the jury could, based on probability, attribute the injury to another cause." *Braddy v. Union Pac. R.R. Co.*, 116 S.W.3d 645, 649 (Mo. App. E.D. 2003).

For Lozano to make a submissible FELA case regarding an unsafe work condition, he had to demonstrate that BNSF had a duty to provide a reasonably safe work place, BNSF's lack of care played a part, however slight, in producing his injury, and his injury was foreseeable. *Palmer v. Union Pacific R. Co.*, 311 S.W.3d 843, 853 (Mo. App. E.D. 2010). FELA places upon a railroad employer the duty to provide its employees with a reasonably safe place to work. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000).

The principal opinion asserts that Lozano's "excluded evidence does not purport to demonstrate alternative methods of moving these ETDs from the locomotive cab that would have allowed him to perform this task without injury or alternative conditions in which Lozano could have performed this task and not been hurt." *Slip Op.* 7. However, the excluded evidence would have demonstrated that there was an alternative location *within the locomotive* for the ETDs. Had BNSF required the ETDs to be in the alternative location *within* the locomotive, Lozano would not have had to lift the ETDs from the cab nose. This evidence also could establish the prevention of other workplace

2

injuries such as the danger of tripping over the improperly stored ETDs.  Lozano's proffered evidence would have established Lozano's injury was foreseeable to BNSF.

Accordingly, I believe it was error for this evidence to have been excluded; all of the facts encompassing Lozano's claims should have been presented to the jury for it to have a complete picture and make a proper determination of potential liability.  I would reverse and remand for a new trial.


_____
GEORGE W. DRAPER III, JUDGE