SUPREME COURT OF MISSOURI
en banc



MELISSA MOODY,                                )
                                                        )
                    Respondent,                )
                                                        )        *Opinion issued March 18, 2025*
v.                                                      )        No. SC100711
                                                        )
DYNAMIC FITNESS                          )
MANAGEMENT, LTD.,                     )
                                                        )
                    Appellant.                   )

**APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**The Honorable Michael W. Noble, Judge**

Dynamic Fitness Management Ltd. appeals the circuit court's judgment, entered after a jury trial, in favor of Melissa Moody on her negligence claim arising from an injury she sustained while weightlifting during a group class led by a Dynamic trainer. Because the record establishes Dynamic either did not preserve its claims of error for appellate review or its preserved claims fail on the merits, this Court affirms the circuit court's judgment.

**Factual Background and Procedural History**

Dynamic provided training services at a gym in St. Louis. When Moody joined the gym in 2011, she signed a personal training agreement with Dynamic and began working with a Dynamic personal trainer. In January 2013, when the personal trainer

transferred to another location, Moody stopped working with that personal trainer and began taking a group class led by a different Dynamic trainer.

During a group class in May 2013, Moody for the first time did a push press exercise, a common exercise in which the participant takes a barbell off a rack at about chest height, drops his or her knees "a little bit," and then pushes the barbell overhead. The trainer showed participants how to perform the push press and then instructed Moody to perform three repetitions of the push press. The trainer left to attend to others in the class. Moody began using a barbell with two 10-pound plates, weighing a total of 65 pounds. Moody completed the three repetitions at that weight with no problem. The trainer returned, added two more 10-pound plates to the barbell for a total of 85 pounds, instructed Moody to perform three repetitions, and then left to check on others in the class. Moody successfully did two push presses but on the third felt pain in her neck, shoulders, and back and put the barbell back on the rack before collapsing. Moody was diagnosed with a herniated disc in her neck and underwent two surgeries.

Moody sued Dynamic for negligence. Dynamic raised as affirmative defenses implied primary assumption of the risk and express assumption of the risk. It asserted Moody impliedly assumed the risk of injury by engaging in weightlifting and expressly assumed the risk of injury by signing Dynamic documents containing liability waivers. Dynamic filed a motion for directed verdict at the close of Moody's evidence and renewed its motion at the close of all the evidence.

The jury awarded $1 million in damages and found Moody 70 percent at fault and Dynamic 30 percent at fault. The circuit court entered judgment for Moody in the

amount of $300,000 plus post-judgment interest.  Dynamic filed a motion for new trial, which was deemed overruled under Rule 81.05(a)(2)(A) when the circuit court did not rule on it within 90 days after it was filed.  Dynamic timely appealed.[1]

**Analysis**

**I.  Dynamic preserved no claim of error related to its motion for directed verdict**

In points I and IV, Dynamic asserts the circuit court erred in overruling its motion for directed verdict on its affirmative defenses of implied primary assumption of the risk from Moody's weightlifting activity and express assumption of the risk by Moody signing its liability waivers before performing the weightlifting activity.  Moody asserts neither point is preserved for review because Dynamic did not file a motion for judgment notwithstanding the verdict ("JNOV").  This Court agrees Dynamic preserved no claim of error.

Rule 72.01(b) governs motions for JNOV and provides, in relevant part:

Not later than thirty days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict ….  A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.  If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

"[T]o preserve a jury-tried issue for appellate review, a party must include the issue in both a motion for directed verdict at the close of all evidence, if the defendant puts on

---

[1] This Court granted transfer after an opinion by the court of appeals.  Mo. Const. art. V, sec. 10.  All rule references are to Missouri Court Rules (2023).

3

evidence, and in a motion for JNOV." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019); *see also Sanders v. Ahmed*, 364 S.W.3d 195, 207-08 (Mo. banc 2012) ("After verdict, of course, a motion for JNOV also is required to preserve the issues raised for appeal."). Stated another way, a motion for directed verdict by itself preserves nothing for review; likewise, a motion for JNOV without a prior timely motion for directed verdict preserves nothing for review. This is because a motion for JNOV asks the circuit court to reconsider its earlier decision overruling the motion for directed verdict after the circuit court has had the benefit of considering all of the evidence at trial. Rule 72.01(b) explicitly recognizes this when it says:

> A party may move for a directed verdict at the close of all the evidence. Whenever such motion is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.

Without a prior timely motion for directed verdict, there is no ruling for the circuit court to reconsider. Without a motion for JNOV, the circuit court is never asked to set aside the verdict on the basis it should have sustained the motion for directed verdict.

Dynamic failed to follow the well-established procedure in Rule 72.01(b) when it did not file a motion for JNOV. Dynamic raised in its answer the affirmative defenses of implied primary assumption of the risk and express assumption of the risk. At trial, Dynamic filed a motion for a directed verdict at the close of Moody's evidence and renewed its motion at the close of all the evidence; the circuit court overruled both. After the jury returned its verdict, Dynamic did not file a motion for JNOV under Rule 72.01(b).

4

Instead, Dynamic filed a motion for new trial, including its affirmative defenses of implied primary assumption of the risk and express assumption of the risk. Dynamic's motion stated it was a motion for new trial "pursuant to Rule 78.01" and did not mention a motion for JNOV or Rule 72.01(b). It asked the circuit court to grant a new trial and "such other and further relief as it deems just and appropriate under the circumstances," but it did not ask the circuit court to enter JNOV or to reconsider its overruling of Dynamic's motion for directed verdict.

Dynamic asserts the Court should find points I and IV preserved by looking beyond the title of its motion for new trial and finding its broad prayer requesting "such other and further relief as [the circuit court] deems just and appropriate under the circumstances" sufficient to preserve its points.

As a preliminary matter, the Court notes it need not reach this argument because points I and IV assert no claim of error related to overruling a motion for new trial or a motion for JNOV and, instead, assert only: "The trial court erred in denying [Dynamic]'s motion for directed verdict." Rule 84.04(d)(1)(A) provides a point relied on must "[i]dentify the trial court ruling or action that the appellant challenges." As set out above, a motion for directed verdict by itself preserves nothing for appellate review. Dynamic's points I and IV, therefore, assert a circuit court error—overruling a motion for directed verdict—Dynamic never preserved for appellate review and upon which an appellate court could never grant relief. "Rule 84.04's requirements are mandatory." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (internal quotation omitted). Points I and IV as written preserve nothing for appellate review.

5

Further, were this Court to overlook Dynamic's defective points relied on, which this Court declines to do, the Court would reject its argument. "Cases should be heard on the merits if possible, and court rules should be construed liberally to allow an appeal to proceed." *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 641 (Mo. banc 2005). While this Court desires to hear cases on the merits, Dynamic's argument asks this Court to disregard Rules 72.01(b) and 78.01 and the fundamental differences between a motion for new trial and a motion for JNOV, which the Court will not do.

"The purpose of a motion for new trial is to give the circuit court the opportunity to correct its own errors without appellate court intervention." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 640 (Mo. banc 2013). "[A] motion for JNOV and a motion for new trial serve different purposes." *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 755 (Mo. banc 2016) (Fischer, J., concurring in part and dissenting in part). "The motion for new trial is required to raise grounds that would entitle a party to a new trial." *Id.* (internal quotation omitted). "[A]n allegation that the court erred in failing to grant a new trial because the court should have granted a motion for a directed verdict at the close of all of the evidence does not state a ground for new trial." *Id.* (emphasis omitted) (internal quotation omitted). "It only states a ground for [JNOV] and must be raised in a motion seeking that relief and not in a motion for new trial." *Id.* (emphasis omitted) (internal quotation omitted).

Rule 72.01(b) explicitly permits a party to join a motion for new trial with a motion for JNOV or request a new trial in the alternative in the motion for JNOV. This is because a motion for new trial and a motion for JNOV are distinct and ask for different

relief.  Rule 72.01(c)(1) requires a circuit court sustaining a motion for JNOV to rule on any motion for new trial.  Again, this is because a motion for new trial and a motion for JNOV are fundamentally different and request different relief, and one type of relief may be appropriate even if the other is not.

Dynamic filed only a motion for new trial.  Dynamic titled its motion a motion for new trial, referenced only Rule 78.01, and asked only for a new trial.  The Court will not construe Dynamic's general prayer for relief for "such other and further relief as [the circuit court] deems just and appropriate under the circumstances" as a request the circuit court grant JNOV under Rule 72.01(b).  A contrary ruling would render meaningless Rules 72.01(b) and 78.01 and the distinct purposes of motions for new trial and motions for JNOV.  Further, if the Court construed Dynamic's broad prayer as Dynamic requests, it would require the Court to disregard Dynamic's motion title, rule reference, and specific request for relief and become an advocate for Dynamic, which this Court will not do.  *See also Massman Constr. Co. v. Mo. Highway & Transp. Comm'n*, 914 S.W.2d 801, 803-04 (Mo. banc 1996) (holding a circuit court committed reversible error in treating the plaintiff's motion for additur as a motion for new trial when the plaintiff did not ask for a new trial but included a broad prayer for relief for "such other and further relief as the court deems appropriate").

Because Dynamic did not preserve for review points I and IV concerning its affirmative defenses of implied primary assumption of the risk and express assumption of

7

the risk, this Court denies points I and IV.[2]

## II. Dynamic preserved no claim of error related to spoliation

In point III, Dynamic argues the circuit court abused its discretion in letting Moody read spoliation adverse inference admissions to the jury. Moody filed a pretrial motion for adverse admissions against Dynamic for spoliation and for sanctions, alleging Dynamic had intentionally destroyed certain evidence. Moody alleged she was entitled to present adverse inference admissions to the jury that the destroyed evidence would have been unfavorable to Dynamic. Dynamic filed a motion in opposition, asserting there was no intentional destruction of evidence supporting an adverse inference due to spoliation. After a pretrial hearing, the circuit court sustained Moody's motion and entered its order permitting Moody to read the adverse inference admissions to the jury. The adverse inference admissions were Exhibits 30 through 33. On the first day of trial, before the jury was sworn, the circuit court held a hearing during which the parties discussed the final wording of Exhibits 30 through 33. Dynamic's counsel objected only to the wording of Exhibit 33 and repeated his objection that spoliation had not occurred. When Moody read the adverse inference admissions to the jury, Dynamic did not object. The circuit court admitted Exhibits 30 through 33 in evidence but ordered they should not be published to the jury. As to admission of Exhibits 30 through 33, Dynamic's counsel

---

[2] Pursuant to Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Dynamic does not request plain error review and, in any event, has not alleged or proven manifest injustice or miscarriage of justice.

8

stated: "No objection, just for the legal record." Dynamic included its spoliation argument in its motion for new trial. Moody argues Dynamic preserved no claim related to spoliation because Dynamic did not object when Moody read the adverse inference admissions to the jury. This Court agrees.

Dynamic argues it preserved its claim by objecting at trial, but Dynamic cites only the discussion of the wording of Exhibits 30 through 33 and its objection to Exhibit 33 at the hearing held the first day of the trial before the jury was sworn. To preserve for appeal a claim of evidentiary error, a party must object to the evidentiary ruling at trial. *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 452 n.4 (Mo. banc 2014).[3] A hearing on the first day of trial before the jury is sworn is a pretrial hearing, and an objection at a pretrial hearing concerning an evidentiary error preserves nothing for appellate review. *See Petersen v. State*, 658 S.W.3d 512, 515-16 (Mo. banc 2022) (finding a motion in limine filed and overruled the morning of trial amounted to a pretrial objection preserving nothing for appellate review); *K.B. v. Oasis Foot Spa & Massage, LLC*, 703 S.W.3d 606, 614 (Mo. App. 2024) (holding challenges to an adverse inference admission were not preserved for appellate review when the appellant raised the issue in its motions in limine and in its post-trial motion but did not object at trial to the adverse inference being given). As this Court recently explained, requiring a contemporaneous objection at trial to an evidentiary ruling

> serves the important dual purposes of allowing the trial judge to reconsider
> the pretrial, preliminary admissibility ruling in light of the evidence actually

---

[3] This Court has held spoliation is an evidentiary doctrine. *Brown v. Hamid*, 856 S.W.2d 51, 56-57 (Mo. banc 1993).

presented at trial and preserving the claim of error for appeal by making a clear record ... so an appellate court may consider the same in determining whether the circuit court's ruling was proper.

*Schultz v. Great Plains Trucking, Inc.*, No. SC100582, _ S.W.3d _, slip op. at 6 (Mo. banc Feb. 11, 2025); *see also Oasis*, 703 S.W.3d at 614 ("An objection at trial would have placed the issue squarely before the circuit court after the court was able to consider all of the evidence presented at trial. ... The circuit court may have come to a different conclusion regarding the propriety of the adverse inference after hearing [a witness's] testimony.").

Dynamic made no objection at trial to the adverse inference admissions. Any objection it made before the jury was sworn was not an objection at trial. Because of this, Dynamic preserved nothing for appellate review concerning spoliation.[4] Point III is denied.

## III. Moody's verdict director did not give the jury a roving commission

In point II, Dynamic argues the circuit court erred in overruling its motion for new trial because Moody's verdict director, Instruction 10, gave the jury a roving commission "[b]y failing to address that these conditions increased the risk, or would have revealed some relevant fact, or caused [Moody's] injury," which "permitted the jury to roam freely through the evidence of the case and choose any fact of their liking to find fault." Because Instruction 10 did not give the jury a roving commission, the circuit court did not err in submitting Instruction 10.

---

[4] As in points I and IV, Dynamic does not request plain error review and has not alleged or proven manifest injustice or miscarriage of justice.

## Standard of Review

"[W]hether a jury was properly instructed is subject to *de novo* review." *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 413 (Mo. banc 2019). "Review is conducted in the light most favorable to the instruction's submission." *Id.* "When determining whether a roving commission occurred, a jury instruction should be considered in the context of the trial as a whole." *Id.* "An instructional error is only grounds for reversal when the instruction misdirected, misled, or confused the jury and resulted in prejudice." *Id.* (internal quotation omitted). "This Court will reverse only if the error resulted in prejudice that materially affected the merits of the case." *Id.*

## Analysis

"A roving commission occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit [ ] its fancy or its perception of logic to impose liability." *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010) (alteration in original) (internal quotation omitted). "Where the testimony in a case explains a phrase used in the verdict director, there is no roving commission." *Id.* at 767 (internal quotation omitted).

Instruction 10 stated:

In your verdict, you must assess a percentage of fault to [Dynamic], whether or not [Moody] was partly at fault, if you believe:

First, either:

> *[the Dynamic trainer] did not conduct the required initial fitness assessment of [Moody], or*

11

> *[the Dynamic trainer] failed to assess whether [Moody] was capable of performing a push press, or*
>
> *[the Dynamic trainer] did not supervise [Moody] while she was performing a push press,* or
>
> [the Dynamic trainer] instructed [Moody] to perform a push press when it was unsafe to do so, and
>
> Second, [Dynamic], in any one or more of the respects submitted in paragraph First, was thereby negligent, and
>
> Third, such negligence directly caused or directly contributed to cause damage to [Moody].

(Emphasis added).

Dynamic asserts the first three disjunctive subparts in Instruction 10 gave the jury a roving commission by permitting "the jury to find that [Dynamic] was negligent without explaining how the facts set forth in the instruction caused or increased Moody's risk of injury." Dynamic did not object to the fourth disjunctive subpart.

Instruction 10 complied with MAI 17.02 (8th ed.), which provides the required instruction for submission to the jury of multiple negligent acts and does not require or permit paragraph first to include language that the alleged negligent act caused or increased the risk of injury. Instead, MAI 17.02 specifies paragraph first should set out, in the disjunctive, each allegedly negligent act. Paragraph third should address causation and, in a comparative fault case, should require the jury to find "such negligence directly caused or directly contributed to cause damage to plaintiff." *See* MAI 37.01 (8th ed.). Contrary to Dynamic's argument, Instruction 10 did not give the jury a roving commission because it complied with MAI 17.02 in requiring the jury to find both that Dynamic committed negligent acts and that those negligent acts directly caused or

12

directly contributed to cause Moody's damages. Paragraph 2 of the Notes on Use to MAI 17.02 makes this clear: "This instruction submits three improper acts in the disjunctive. … As is the case with all disjunctive submissions, there must be sufficient evidence to support all of the improper acts or the instruction will be erroneous."

Dynamic also asserts Instruction 10 gave the jury a roving commission because there was not sufficient evidence the allegedly negligent acts submitted in paragraph first caused or contributed to cause Moody's damages. Dynamic gives as an example the first disjunctive and asserts there was no evidence the trainer's failure to perform the initial assessment caused or contributed to cause Moody's damages months later.

The Court concludes Moody presented sufficient evidence from which a reasonable juror could have found Dynamic's alleged negligent acts in paragraph first of Instruction 10 directly caused or directly contributed to cause Moody's damages. Moody presented the expert testimony of her former personal trainer, who explained Dynamic's standards provided trainers are expected to conduct initial assessments of clients before training begins. The personal trainer testified performing an assessment is important for a trainer "to know anything [the trainer] needed to know to reduce the risk of injury for that client[,]" and the assessment "was the form of reducing that risk." The personal trainer explained the initial assessment would evaluate a client's posture, mobility, and range of motion to reduce the risk of injury. The personal trainer testified health history is included in the assessment. The personal trainer testified she had performed an initial assessment of Moody, and she believed Moody had tightness in her neck and shoulders limiting her range of motion and causing her to lack the range of motion and the

13

appropriate posture to perform overhead lifts with a barbell. The personal trainer testified Moody should not have been instructed to perform the push press, and the group class trainer exposed Moody to a type of harm well known in the personal training industry in so instructing her. The personal trainer also testified she did not have Moody perform barbell overhead training because it was not a benefit to Moody at the time and posed a risk of injury based on her monitoring of Moody. The personal trainer also testified a trainer has a responsibility to always assess the client in a given situation and "constantly coach any given client all the time" to reduce the risk of injury.

The jury had before it sufficient evidence from which it reasonably could have found a causal connection between Moody's injury and the Dynamic group trainer's failure to perform an initial assessment, failure to assess Moody's ability to perform a push press, and failure to supervise Moody while she was performing a push press. Instruction 10 did not give the jury a roving commission. Point II is denied.

## Conclusion

This Court affirms the circuit court's judgment.

_____
Ginger K. Gooch, Judge

All concur.

14